MARK I. WRAIGHT (State Bar No. 228303)
ANDREW S. ELLIOTT (State Bar No. 254757)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
Telephone:  (415) 398-3344
Facsimile:  (415) 956-0439

Attorneys for Defendants
BANK OF AMERICA, N.A.
and ALEX AIVALIKLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MARTINEZ-RODRIGUEZ, individually and METZLY M., a minor by and through her guardian ad litem, SYLVIA VILLALPANDO,,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>BANK OF AMERICA; ALEX AIVALIKLIS; and DOES 1 through 30, inclusive,,<br><br>　　　　　Defendants. | Case No.:  CV11-6572 (CRB)<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE PURSUANT TO CCP 425.16 (anti-SLAPP); SUPPORTING MEMORANDUM**<br><br>Hearing Date:　March 16, 2012<br>Time:　　　　　10:00 a.m.<br>Judge:　　　　　Hon. Charles R. Breyer<br>Dept.:　　　　　Courtroom 8, 19th Floor<br>Complaint Date:　December 21, 2011 |

**NOTICE OF MOTION AND MOTION TO STRIKE**

**PLEASE TAKE NOTICE** that on March 16, 2012, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8, 19th Floor, of the above entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendants Bank of America, N.A., incorrectly sued as Bank of America, and Alex Aivaliklis (collectively referred to as "BofA"),will move to strike plaintiff Luis Martinez-Rodriguez's ("Martinez") causes of action for negligence (first cause of action), negligent infliction of emotional distress (second cause of action), intentional infliction of emotional distress (third cause of action), negligence per se (fourth cause of action), negligent supervision (ninth cause of action), misrepresentation (tenth

-2-

cause of action), and conspiracy (eleventh cause of action) pursuant to California Code of Civil Procedure section 425.16.

BofA brings this motion under California Code of Civil Procedure section 425.16 on the ground that each of Martinez's causes of action identified above arises from BofA's exercise of protected free speech and right to petition and that Martinez cannot show a probability of prevailing on any of his claims.

This motion to strike is based on this notice, BofA's motion, the attached memorandum of points and authorities, the attached declaration of Alex Aivaliklis, the complaint, and all other records and files in this action.

Please take further notice that at the same time and place, BofA will move to dismiss Martinez's causes of action for negligence per se (fourth cause of action), violations of 42 USC §1983 (fifth through eight causes of action), misrepresentation and fraud (tenth cause of action), conspiracy/conversion/misappropriation (eleventh cause of action), violation of the Fair Housing Act (twelfth cause of action), declaratory relief (thirteenth) and false imprisonment (fourteenth cause of action) pursuant to Federal Rule of Civil Procedure, Rule 12(b)(6).

DATED:  February 10, 2012                SEVERSON & WERSON
                                         A Professional Corporation


                                         By:     /s/ *Andrew S. Elliott*
                                                      Andrew S. Elliott

                                         Attorneys for Defendants
                                         BANK OF AMERICA, N.A.
                                         and ALEX AIVALIKLIS

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ........................................................................................1

I. STATEMENT OF THE CASE ............................................................................2

    A. Martinez's Material Allegations Against BofA ......................................2

    B. Additional Factual Background Set Forth in Supporting Declaration ...............................................................................................3

II. MARTINEZ'S CLAIMS SHOULD BE STRICKEN .........................................4

    A. The Required Two-Step Analysis Under § 425.16 ................................4

    B. Step 1: Martinez's Claims Arise From Protected Activity ..................6

    C. Step 2: Martinez Cannot Prove A Probability Of Prevailing ...............7

        1. The Challenged Claims are Barred by the Absolute Litigation Privilege ................................................................................8

        2. The Annunzio-Wylie Anti-Money Laundering Act Immunizes BofA Against the Challenged Claims ..................................10

III. BOFA IS ENTITLED TO ATTORNEY'S FEES ............................................11

IV. CONCLUSION ..................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Lee v. Bankers Trust Co.*,
 166 F.3d 540 (2nd Cir. 1999) .................................................................................................. 10

*Lopez v. First Union Nat'l Bank of Florida*,
 129 F.3d 1186 (11th Cir. 1997) ............................................................................................... 10

*Stoutt v. Banco Popular de Puerto Rico*,
 320 F.3d 26 (1st Cir. 2003) ..................................................................................................... 10

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
 190 F.3d 963 (9th Cir. 1999) ..................................................................................................... 4

**STATE CASES**

*American Humane Assn. v. Los Angeles Times Communications*
 92 Cal.App.4th 1095 (2001) .................................................................................................... 11

*Chabak v. Monroy, 154 Cal.App.4th 1502*,
 154 Cal.App.4th 1502 (2007) ................................................................................................ 5, 6

*Church of Scientology v. Wollersheim*,
 42 Cal.App.4th 628 (1996) ........................................................................................................ 7

*ComputerXpress, Inc. v. Jackson*,
 93 Cal.App.4th 993 (2001) ........................................................................................................ 6

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*
 29 Cal.4th 53 (2002) .................................................................................................................. 5

*Fontani v. Wells Fargo Investments*,
 129 Cal.App.4th 719 (2005) ...................................................................................................... 6

*Fox Searchlight Pictures, Inc. v. Paladino*,
 89 Cal.App.4th 294 (2001) ........................................................................................................ 7

*Hagberg v. California Fed. Bank, FSB*,
 32 Cal.4th 350 (2004) ............................................................................................................ 1, 8

*Hansen v. Cal. Dept. of Corrections & Rehabilitation*,
 171 Cal.App.4th 1537 (2008) .................................................................................................... 7

*Kashian v. Harriman*,
 98 Cal.App.4th 892 (2002) ........................................................................................................ 6

*Kibler v. Northern Inyo County Local Hosp. Dist.*,
   39 Cal.4th 192 (2006) ................................................................................................... 6

*Mann v. Quality Old Time Service, Inc.*,
   120 Cal.App.4th 90 (2004) ...................................................................................... 1, 6

*Navellier v. Sletten*,
   29 Cal.4th 82 (2002) ..................................................................................................... 5

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*,
   133 Cal.App.4th 658 (2005) ........................................................................................ 5

*Rusheen v. Cohen*,
   37 Cal.4th 1048 (2006) ................................................................................................ 4

*Salma v. Capon*
   161 Cal.App.4th 1275 (2008) ...................................................................................... 6

*Scott v. Metabolife Internat., Inc. I*,
   115 Cal.App.4th 404 (2004) ........................................................................................ 7

*Siam v. Kizilbash*,
   130 Cal.App.4th 1563 (2005) ...................................................................................... 6

*Silberg v. Anderson*,
   50 Cal.3d 205 (1990) .................................................................................................... 9

*Traditional Cat Assn., Inc. v. Gilbreath*,
   118 Cal.App.4th 392 (2004) .................................................................................... 5, 7

*Wilson v. Parker, Covert & Chidester*,
   28 Cal.4th 811 (2002) ................................................................................................... 5

**FEDERAL STATUTES**

United States Code
   Title 31, § 5312 .......................................................................................................... 10
   Title 31, § 5318 .................................................................................................... *passim*

**STATE STATUTES**

Cal. Civil Code
   § 47 .............................................................................................................. 1, 8, 9, 11

Cal. Code of Civil Procedure
   § 425.16 ............................................................................................................. *passim*

# MEMORANDUM OF POINTS & AUTHORITIES

## SUMMARY OF ARGUMENT

Pursuant to California Code of Civil Procedure § 425.16, defendants Bank of America, N.A. (the "Bank") and Alex Aivaliklis ("Aivaliklis") (collectively referred to as "BofA") move to strike plaintiff Luis Martinez-Rodriguez's ("Martinez") causes of action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, negligence per se, negligent supervision, misrepresentation and conspiracy.

Each of Martinez's claims arises from BofA's reporting a suspected crime to the police. Reporting suspected criminal activity to the police is conduct in the furtherance of the constitutionally protected right of petition or free speech. Cal. Code Civ. Proc., §425.16(b)(1). Accordingly, § 425.16 applies to each of Martinez's claims against BofA.

Because BofA's report to the police forms a substantial basis for each of Martinez's claims, the claims must be stricken unless Martinez establishes a probability of prevailing on the merits. *Mann v. Quality Old Time Service, Inc*., 120 Cal.App.4th 90, 104 (2004).

Martinez cannot carry that heavy burden. Martinez cannot prevail on his claims as they are barred both by the absolute litigation privilege (*Hagberg v. California Fed. Bank, FSB*, 32 Cal.4th 350, 364 (2004); Cal. Civ. Code, § 47(b)) and the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(3)(a), which immunizes "[a]ny financial institution that makes a voluntary disclosure of any possible violation of law … to a government agency" from liability "under … any constitution, law, or regulation of any State."

As all of Martinez's claims against BofA fall within § 425.16's protective scope and as Martinez cannot prove a probability of prevailing on any of them, the Court must and should strike these claims as against BofA. The Court should also award BofA its attorney fees on its motions to strike pursuant to § 425.16(c).

## I. STATEMENT OF THE CASE

### A. Martinez's Material Allegations Against BofA

Each of Martinez's claims against BofA is based on the same set of alleged facts stated at paragraphs 10-28 of his complaint.

On February 22, 2011, Aivaliklis contacted Martinez to discuss unidentified account "irregularities as to an account he had opened, in full compliance with all of Bank of America's identification policies." Compl., ¶11. Rather than discussing account irregularities, Aivaliklis instead contacted Martinez in order to detain him and arrange for his arrest. *Id*., ¶12.

After BofA contacted the Marysville Police or Immigration and Customs Enforcement[1], Martinez "was arrested by the ICE at the Marysville Branch of Bank of America and taken to and further detained at the Immigration and Customs Enforcement Detention Center for seven days and then detained in New Mexico for another seven days." *Id*., ¶14. This "unlawful detainment under false pretenses of Plaintiff [] constitute[s] racially motivated discriminatory practices". *Id*., ¶16.

According to Martinez, BofA failed to train its employees with respect "to customer relations with undocumented Mexican immigrants …, including Plaintiff, and by failing to implement proper policies, procedures, and guidelines in accordance with the Constitution, and applicable federal, state and local laws and statutes …." *Id*., ¶20. BofA is therefore responsible for the emotional and mental injuries suffered as a result of Mr. Martinez's arrest and subsequent detention. *Id*., ¶¶31 (negligence), 37 and 43 (negligent infliction of emotional distress), 45 and 46 (intentional infliction of emotional distress), 51 and 53 (negligence per se), 82 (misrepresentation), and 90 and 92 (conspiracy).

---

[1] It's unclear from the complaint whether BofA contacted the Marysville Police or Immigration and Customs Enforcement. See Compl., ¶21 (BofA "unlawfully detained [Martinez] and orchestrated his arrest by the Marysville Police and the Department of Immigration and Customs Enforcement.")

**B. Additional Factual Background Set Forth in Supporting Declaration**[2]

On February 9, 2011, Martinez opened a new checking account (the "Account"). In connection with finalizing the Account, BofA generated a signature card based on information provided by Martinez. The signature card indentified, among other things, the account number, account type, originating bank etc. The signature card also identified Martinez's social security number. BofA presented the signature card to Martinez and Martinez signed it. By executing the signature card, Martinez "acknowledge[d] and agree[d] that the signature(s) will serve as the certification (set forth below) of the taxpayer identification number[3] to which [the customer] want[s] interest reported." Declaration of Alex Aivaliklis ("Aivaliklis Decl."), ¶4, 5, Ex. A.

On February 22, 2011, the Bank's fraud prevention group contacted Aivaliklis and advised that the Account had been flagged because information used to open the Account may not belong to the customer. The fraud prevention group informed Aivaliklis that the Social Security Number used by Martinez on the signature card had been issued prior to his date of birth. Aivaliklis was instructed to contact Martinez and verify that the social security number belonged to Martinez. Aivaliklis Decl., ¶6.

Aivaliklis contacted Martinez and explained that BofA identified an irregularity with the Account and that BofA needed to verify his social security number. Aivaliklis asked Martinez to come into the Marysville Banking Center (the "Branch") and for him to bring his social security card. Martinez told Aivaliklis he would. Aivaliklis Decl., ¶8.

Later that day, Martinez came to the Branch and met with Aivaliklis. Aivaliklis asked for Martinez's social security card and Martinez complied. Aivaliklis suspected the social security card was fake because the font and texture were not authentic. Aivaliklis asked Martinez where

---

[2] 425.16(b)(2) provides that "[i]n making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

[3] A Taxpayer Identification Number (TIN) is an identification number used by the Internal Revenue Service (IRS) in the administration of tax laws. It is issued either by the Social Security Administration (SSA) or by the IRS, e.g., a social security number or Individual Tax Identification Number. Request for Judicial Notice, Ex. A.

-3-

1  he obtained his social security card and Martinez admitted that he had purchased the card in San
2  Francisco approximately 17 years ago. Aivaliklis Decl., ¶¶10-13.

3  Based on the appearance of the social security card and on Martinez's admission, and
4  because it is illegal to present false information to obtain bank services, Aivaliklis suspected
5  Martinez was committing a crime. Aivaliklis called the Marysville Police and reported the
6  incident. Aivaliklis Decl., ¶¶13-14.

7  A Marysville police officer arrived a few minutes later and questioned Martinez. The
8  officer asked Martinez where he obtained his social security card. Martinez explained that he had
9  purchased the card in San Francisco about 17 years ago. The officer asked Martinez if the social
10 security number belonged to him, and Martinez told the officer that he knew the social security
11 number did not belong to him. Aivaliklis Decl., ¶¶16-17.

12 After Mr. Martinez admitted he knew the social security number did not belong to him,
13 the officer arrested Martinez, placed him in handcuffs and led him out of the Branch. Aivaliklis
14 Decl., ¶18.

15 BofA did not contact the Immigration and Customs Enforcement, or any other
16 immigration enforcement agency, regarding the incident. Aivaliklis Decl., ¶19.

## II.  MARTINEZ'S CLAIMS SHOULD BE STRICKEN

### A.  The Required Two-Step Analysis Under § 425.16

"A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional right to free speech and to petition the government for redress of grievances." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1055-1056 (2006) (citations omitted).

Under section 425.16(b)(1), a litigant may move to strike a "cause of action against a person arising from any act . . . in furtherance of the person's right of petition or free speech," including "any written or oral statement or writing made in connection with an . . . official proceeding authorized by law."[4] Cal. Code Civ. Proc., §425.16(e)(2). The motion to strike must be

---

[4] The anti-SLAPP statute applies in federal court. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972-73 (9th Cir. 1999).

-4-

granted "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the motion." Cal. Code Civ. Proc., §425.16(b)(1).

In ruling on a motion to strike under the anti-SLAPP statute, a court follows a two-step analysis. Initially, "the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Equilon Enterprises, LLC v. Consumer Cause, Inc*. 29 Cal.4th 53, 67 (2002). If the defendant makes that showing, "the burden shifts to the plaintiff to establish there is a probability he or she will prevail on the cause of action." *Chabak v. Monroy*, 154 Cal.App.4th 1502, 1509 (2007).

In order to meet his second-step burden, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten,* 29 Cal.4th 82, 88-89 (2002) (citation omitted).

"In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." *Wilson v. Parker, Covert & Chidester,* 28 Cal.4th 811, 821 (2002) (citations omitted); *see also Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal.App.4th 392, 398 (2004).

"[A] defendant may defeat a cause of action by showing the plaintiff cannot establish an element of its cause of action or by showing there is a complete defense to the cause of action …." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP,* 133 Cal.App.4th 658, 676 (2005). "[A]lthough section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense." *Id.*

**1**       **B.**     **Step 1: Martinez's Claims Arise From Protected Activity**

**2**       The Anti-SLAPP statute protects "any written or oral statement or writing made *in*

*connection with* an . . . official proceeding authorized by law." Cal. Code Civ. Proc.,

§425.16(e)(2) (emphasis added).

      The statute is construed broadly in accordance with legislative mandate. Cal. Code Civ. Proc., §425.16(a). Accordingly, courts have held that "[c]ommunications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute." *Siam v. Kizilbash*, 130 Cal.App.4th 1563, 1570 (2005). In particular "reporting a suspected crime to interested governmental agencies falls within the scope of section 425.16, subdivision (e)(2) because the reports solicit[] official investigations" or other official proceedings. *Mann v. Quality Old Time Service, Inc., supra,* 120 Cal.App.4th at p. 103.[5]

      Martinez's complaint alleges that BofA engaged in this kind of protected activity. Paragraphs 11 and 13 of the complaint expressly alleges that Martinez "was arrested by the Marysville Police and Immigration and Customs Enforcement" and that BofA was "the direct and proximate cause of his arrest on February 22, 2011." The only reasonable inference is that the police arrived because BofA reported to them that Martinez was suspected of criminal activity.

      The report to the police forms a substantial part of the factual basis for each of the challenged claims against BofA. Compl., ¶¶31 (negligence), 37 and 43 (negligent infliction of emotional distress), 45 and 46 (intentional infliction of emotional distress), 51 and 53 (negligence per se), 80 (negligent supervision), 82 (misrepresentation) and 90 and 92 (conspiracy). And paragraphs 11 and 13 are part of Martinez's lengthy "General Allegations" and are incorporated by reference into Martinez's other claims against BofA.

---

[5] Accord: *Chabak,* 154 Cal.App.4th at 1511-12 (report to police); *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569-70 (2005) (report of suspected child abuse to police and child welfare agency); *see also Salma v. Capon* 161 Cal.App.4th 1275, 1286-87 (2008) (contacting municipal department seeking official investigation); *Fontani v. Wells Fargo Investments,* 129 Cal.App.4th 719, 728-30 (2005), disapproved on other grounds, *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal.4th 192, 203 n. 5 (2006) (report to NASD); *Mann,* 120 Cal.App.4th at 103-04 (report to EPA and CHP Hazmat of illegal dumping of toxic pesticide); *Kashian v. Harriman,* 98 Cal.App.4th 892, 899-901 (2002) (letter to Attorney General requesting investigation); *ComputerXpress, Inc. v. Jackson,* 93 Cal.App.4th 993, 1009 (2001) (filing compliant with SEC).

-6-

1   Because each of Martinez's claims is based on BofA's protected report to the police, each of the claims is subject to the anti-SLAPP statute even if they allege other non-protected conduct as well. *Mann v. Quality Old Time Service, Inc., supra*, 120 Cal. App.4th at p. 104. "[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'"[6] *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal.App.4th 294, 308 (2001). "Where the allegations of constitutionally protected activity are not merely 'incidental' to the unprotected conduct, the protections of section 425.16 are implicated." *Scott v. Metabolife Internat., Inc. I*, 115 Cal.App.4th 404, 419 (2004).

BofA's report to the police (and Martinez's subsequent arrest and detention) is the crux of the challenged claims against BofA—the principal event causing his alleged injuries. In other words, the protected report is an inseparable "substantial part" of the factual basis of each of the challenged claims, and not merely incidental to claims arising from unprotected activity. Undoubtedly, BofA's call to the police was a humiliating experience for Martinez, for which he seeks legal redress.

The gravamen of each of the challenged causes of action against BofA is BofA's report to police reporting a suspected crime. That report is "protected speech" under the anti-SLAPP statute, and thus, BofA has satisfied its initial burden.

### C. Step 2: Martinez Cannot Prove A Probability Of Prevailing

Since BofA has shown Martinez's claims arise from protected activity, the burden shifts to Martinez to establish a probability of prevailing on each of the challenged claims.

To sustain that burden, a plaintiff must present evidence showing he can establish a prima facie case at trial. See *Church of Scientology v. Wollersheim*, 42 Cal.App.4th 628, 654 (1996). The court may consider defendant's opposing evidence in determining whether it defeats plaintiff's case as a matter of law. See *Traditional Cat Assn., Inc. v. Gilbreath*, 118 Cal.App.4th 392, 398 (2004).

---

[6] Nor may Martinez amend his compliant to avoid an Anti-SLAPP motion. *Hansen v. Cal. Dept. of Corrections & Rehabilitation*, 171 Cal.App.4th 1537, 1547 (2008).

-7-

Martinez cannot satisfy his second-step burden of proving a probability of prevailing on any of the challenged claims. BofA's affirmative defenses under the absolute litigation privilege and the Annunzio-Wylie Anti-Money Laundering Act, 31 U.S.C. § 5318(g)(3)(a) nullify all of the challenged claims.

### 1. The Challenged Claims are Barred by the Absolute Litigation Privilege

California Civil Code "[s]ection 47 establishes a privilege that bars liability in tort for the making of certain statements. Pursuant to section 47(b), the privilege bars a civil action for damages for communications made '[i]n … any judicial proceeding, … in any other official proceeding authorized by law, or … in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],' " *Hagberg,* 32 Cal.4th at 360.

"In its application to communications made in a 'judicial proceeding,' section 47(b) is not limited to statements made in a courtroom. …[S]ection 47(b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit." *Id.* at 361. "By analogy to cases extending the litigation privilege to statements made outside the courtroom, … the official proceeding privilege applies to a communication intended to prompt an administrative agency charged with enforcing the law to investigate or remedy a wrongdoing." *Id.* at 362.

> By the same token, the overwhelming majority of cases conclude that when a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege under section 47(b). These cases explain that a statement urging law enforcement personnel to investigate another person's suspected violation of criminal law, to apprehend a suspected lawbreaker, or to report a crime to prosecutorial authorities is shielded from tort liability to the same extent as a similar statement to administrative enforcement agencies. Reasoning that such communications are at least preparatory to "any other official proceeding authorized by law," the majority of decisions in the Courts of Appeal have held such statements to be shielded by an absolute privilege. We find these decisions to be persuasive ….

*Id.* at 364.

The "privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings.  It is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing. . . .  Hence, without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings." *Id.*, at pp. 360-361 (citations omitted).  Importantly, "the ***only*** tort claim . . . outside the privilege established by section 47(b) is malicious prosecution." (*Id.*, at p. 361 (emphasis added).  Thus, Section 47(b) bars claims for negligence, intentional infliction of emotional distress, fraud and conspiracy.  *Silberg v. Anderson*, 50 Cal.3d 205, 215 (1990) (and cases cited therein).

The crux of Martinez's first, second, fourth and ninth causes of action for negligence, as well as his third, tenth and eleventh causes of action for intentional infliction of emotional distress, misrepresentation and conspiracy is BofA's report of suspected criminal activity to the police.  This act caused his arrest and subsequent detention for which he seeks damages.[7]  But *Hagberg* holds that such a report falls within the scope of § 47(b)'s absolute litigation privilege.  As BofA's report to the police is absolutely privileged, Martinez cannot base his claims for negligence, intentional infliction of emotional distress, fraud or conspiracy on that report.  Thus, Martinez cannot prove he has any probability of succeeding on her first, second, third, fourth, ninth, tenth and eleventh causes of action.  They should be stricken.

---

[7] Compl., ¶13 ("DEFENDANTS and DOES through unfair and deceptive acts conspired to deprive Plaintiff of his rights and freedom and were the direct and proximate cause of his arrest on February 22, 2011."); see also Compl., ¶¶31 (BofA's negligence led to Martinez's arrest), 37 and 43 (BofA's negligence in causing Martinez's arrest caused Martinez's emotional distress, 45 and 46 (by causing Martinez's arrest, BofA intentionally caused Martinez's emotional distress), 82 (BofA's intentional misrepresentations led to plaintiff's arrest), and 90 and 92 (BofA conspired to have Martinez arrested).

-9-

## 2. The Annunzio-Wylie Anti-Money Laundering Act Immunizes BofA Against the Challenged Claims

The challenged claims against BofA are felled not only by § 47(b)'s absolute privilege, but also by the Annunzio-Wylie Anti-Money Laundering Act (the "Act") which confers absolute immunity on "any financial institution that makes a voluntary disclosure of any possible violation of law … to a government agency …."  31 U.S.C. § 5318(g)(3)(a).  In the Act's words, neither the institution nor its officer or employee who makes such a disclosure "shall … be liable to any person under … any constitution, law, or regulation of any State" for the disclosure.  *Id.*

Though the Act is codified as part of the Bank Secrecy Act that deals, largely, with preventing money laundering and similar crimes, neither the language nor the purpose of the Act is limited to reports of those crimes.  Instead, § 5318(g)(3)(a) applies to any voluntary disclosure of "any possible violation of law."  *See Lopez v. First Union Nat'l Bank of Florida*, 129 F.3d 1186, 1192 (11th Cir. 1997).  In its author's words, the Act was intended to provide "the broadest possible exemption from civil liability for the reporting of suspicious transactions."  *Stoutt v. Banco Popular de Puerto Rico*, 320 F.3d 26, 31 (1st Cir. 2003).

Here, Aivaliklis' 911 call to alert the police to what he thought was a crime is clearly a "voluntary disclosure" to "a government agency" about a "possible violation of law."  At the time he made the call, Aivaliklis was an officer and employee of BofA, which is a "financial institution" within the Act's meaning.  31 U.S.C. § 5312(a)(2)(A).  Accordingly, the call fell squarely within the scope of the Act's absolute immunity.  Under the Act, neither BofA nor Aivaliklis may be held liable to any person, including Aivaliklis, under any provision of California law—constitution, statute or common law—for Aivaliklis's 911 call.  Accordingly, the Act bars each of the challenged claims against BofA, since they are all based on damages steming from Aivaliklis' call.

Though *Lopez* read a "good faith" limitation into the Act, two later Court of Appeal opinions have squarely rejected that embroidery on the Act's clear language.  *Compare Lopez*, 129 F.2d at 1192-93 *with Lee v. Bankers Trust Co.*, 166 F.3d 540, 544-45 (2nd Cir. 1999); *Stout*, 320 F.3d at 31-32.  As *Lee* points out, "[t]he Act broadly and unambiguously provides for immu-

-10-

1  nity from any law …[; t]here is not even a hint that the statements must be made in good faith in
2  order to benefit from immunity. *Lee*, 166 F.3d at 544. Moreover, § 5318's legislative history
3  shows that an express good faith requirement for immunity was dropped from an early draft of
4  the bill and was not included in the Act as ultimately adopted by Congress. *Id*. at 545; *Stoutt,* 320
5  F.3d at 31. Courts cannot add a limitation that Congress expressly considered and rejected.

6  Because the Act confers an absolute immunity from liability against any state law claim
7  arising from BofA's police report, Martinez cannot establish that he has any probability of
8  prevailing on any of the challenged claims against BofA or Aivaliklis. Each of the challenged
9  causes of action should be stricken for this additional reason.

### III. BOFA IS ENTITLED TO ATTORNEY'S FEES

11  Section 425.16(c) provides that "a prevailing defendant on a special motion to strike shall
12  be entitled to recover his or her attorney's fees and costs."

13  A defendant who prevails on a special motion to strike under the Anti-SLAPP statute may
14  seek a fee award at the same time as it moves to strike the complaint. Alternatively, the
15  "successful defendant who specially moves to strike pursuant to section 425.16 has the option of
16  utilizing a separate noticed attorney fee motion [after the judgment of dismissal is entered]. A
17  trial court cannot deny a section 425.16 attorney fee motion because the defendant seeks to
18  litigate that issue in a separate subsequently filed noticed motion." *American Humane Assn. v.*
19  *Los Angeles Times Communications* 92 Cal.App.4th 1095, 1103 (2001).

20  After the court grants BofA's motion to strike Martinez's causes of action, BofA will file
21  a separate motion seeking its reasonable attorney's fees and costs.

### IV. CONCLUSION

23  BofA has met its burden establishing that the challenged causes of action are based on
24  BofA's exercise of constitutionally protected free speech and right to petition. Martinez cannot
25  meet his burden of establishing a reasonable probability that he will prevail on the merits because all
26  the challenged causes of actions are premised upon communications immune from liability under
27  California Civil Code section 47(b) and the Annunzio-Wylie Anti-Money Laundering Act (31

-11-

70001/0080/2105216.2

Motion to Strike
Case No.: CV11-6572 (CRB)

1 | U.S.C. § 5318(g)(3)(a)).  Therefore, the Court should grant this motion, strike the challenged causes of action, later entering an award for attorney's fees and costs on BofA's subsequent motion.

DATED:  February 10, 2012

SEVERSON & WERSON
A Professional Corporation


By: _____/s/ *Andrew S. Elliott*_____
         Andrew S. Elliott

Attorneys for Defendants
BANK OF AMERICA, N.A.
and ALEX AIVALIKLIS

-12-

70001/0080/2105216.2

Motion to Strike
Case No.:  CV11-6572 (CRB)