1 | MARK I. WRAIGHT (State Bar No. 228303)
    ANDREW S. ELLIOTT (State Bar No. 254757)
2 | SEVERSON & WERSON
    A Professional Corporation
3 | One Embarcadero Center, Suite 2600
    San Francisco, CA  94111
4 | Telephone:  (415) 398-3344
    Facsimile:  (415) 956-0439
5 | Email:  miw@severson.com

6 | Attorneys for Defendants
    BANK OF AMERICA, N.A.
7 | and ALEX AIVALIKLIS

8

9 |              UNITED STATES DISTRICT COURT

10 |             NORTHERN DISTRICT OF CALIFORNIA

11

12 | LUIS MARTINEZ-RODRIGUEZ,                    Case No.:  3:11-CV-06572 CRB
     individually and METZLY M., a minor, by and
13 | through her guardian ad litem, SYLVIA       **BANK OF AMERICA, N.A.'S REPLY
     VILLALPANDO,                                BRIEF IN SUPPORT OF MOTION TO
14 |                                             DISMISS FOR FAILURE TO STATE A
                 Plaintiffs,                     CLAIM UPON WHICH RELIEF CAN
15 |                                             BE GRANTED [FED R. CIV. P., RULE
         vs.                                     12(B)(6)]**
16
     BANK OF AMERICA, ALEX AIVALIKLIS,           Hearing Date:    March 16, 2012
17 | and DOES 1 through 30, inclusive,           Time:            10:00 a.m.
                 Defendants.                     Judge:           Hon. Charles R. Breyer
18 |                                             Dept.:           Courtroom 8, 19th Floor
                                                 Complaint Date:  December 21, 2011
19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF THE MOTION TO DISMISS ........................ 1

II. A COMMENT ABOUT THE LEGAL STANDARD FOR MOTION TO DISMISS ............................................................................................................................ 1

III. PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ................................................. 2

    A. Martinez Concedes He Cannot State a Claim for Negligence Per Se ..................... 2

    B. Martinez's Does Not Plead Sufficient Facts to Plausibly Support His Four Claims Based on 42 U.S.C. § 1983 ............................................................ 2

        1. Plaintiff's Complaint Does Not Establish Joint Action ............................. 3

        2. Plaintiff's Complaint Does Not Establish a Symbiotic Relationship ................................................................................................ 5

    C. Martinez Does Not Plead His Fraud Claim With the Requisite Specificity Required by Fed. R. Civ. Proc. R. 9(b) ................................................ 6

    D. Martinez's Hybrid Conspiracy/Conversion/Misappropriation Claim Fails Because He Fails to Plead Sufficient Facts to Establish the Existence of Any Conspiracy Between Aivaliklis and Law Enforcement ............................................................................................................. 7

    E. The Twelfth Cause Of Action For Violation Of The Fair Housing Act Fails To State A Claim For Relief ..................................................................... 8

    F. Plaintiff's Thirteenth Cause of Action for Declaratory Relief Fails to State a Claim for Relief Because It Is Based on His Defective Fair House Act Claim ...................................................................................................... 9

    G. Plaintiffs' Fails to Plead Sufficient Facts to Support Their False Imprisonment Claim ............................................................................................... 10

IV. CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009) .................................................................................. 1, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 2, 8

*Brentwood Academy v. Tennessee Secondary School Athletic Association*,
  531 U.S. 288 (2001) ............................................................................................................... 5

*Burton v. Wilmington Parking Authority*,
  365 U.S. 715 (1961) .......................................................................................................... 5, 6

*Collins v. Womancare*,
  878 F.2d 1145 (9th Cir. 1989) ............................................................................................... 4

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................................................. 1, 2

*Dennis v. Sparks*,
  449 U.S. 24 (1980) ................................................................................................................. 5

*Farr v. United States*,
  990 F.2d 451 (9th Cir.1993) ................................................................................................. 3

*Howerton v. Gabica*,
  708 F.2d 380 (9th Cir.1983) ................................................................................................. 4

*Lee v. Town of Estes Park*,
  820 F.2d 1112 (10th Cir. 1987) ............................................................................................ 4

*Lugar v. Edmondson Oil Co., Inc.*,
  457 U.S. 922 (1982) .......................................................................................................... 4, 5

*Rendell-Baker v. Kohn*,
  457 U.S. 830 (1982) ............................................................................................................... 5

*Rivera v. Green*,
  775 F.2d 1381 (9th Cir.1985) ............................................................................................... 4

**STATE CASES**

*Moore v. City & County of San Francisco*,
  5 Cal. App. 3d 728 (1970) .................................................................................................. 11

*Peterson v. Robison*,
    43 Cal.2d 690 (1954) .......................................................................................................... 11

**FEDERAL RULES**

Federal Rules of Civil Procedure
    Rule 8 ........................................................................................................................................ 1
    Rule 9 ........................................................................................................................................ 6
    Rule 12 ...................................................................................................................................... 3

**FEDERAL STATUTES**

United States Code
    Title 42, § 1983 ..................................................................................................................... 2, 6
    Title 42, § 3601 ........................................................................................................................ 8
    Title 42, § 3604 ........................................................................................................................ 9
    Title 42, § 3605 ........................................................................................................................ 9
    Title 42, § 3606 ........................................................................................................................ 9

## I. INTRODUCTION AND SUMMARY OF THE MOTION TO DISMISS

Plaintiffs start their opposition off on the wrong foot and never manage to get back on track. Rather than focusing on their complaint, and the specific causes of action at issue in this motion, plaintiffs spill much ink citing statistics about the United States' ever-growing population of immigrants from Mexico. From there, plaintiffs segue into a discussion about BofA's programs to offer banking products and services to undocumented workers. All of this is simply the set-up for plaintiffs' punch line: that BofA discriminates against its Hispanic customers like Luis Martinez-Rodriguez's ("Martinez" or "Plaintiff").[1]

But none of this is relevant to Bank of America, N.A. (the "Bank") and Alex Aivaliklis' ("Aivaliklis") (collectively referred to as "BofA" or "Defendants") motion to dismiss. At the end of the day, when the Court looks past the statistics, footnotes, rhetoric and hyperbole, it is clear that Martinez and Metzly M. (together referred to as "Plaintiffs") have not pleaded sufficient facts to state claims for relief that are plausible on their face. Plaintiffs are content to rest on labels, conclusions, and formulaic recitations of elements of their causes of action. But they must, however, be held to a higher standard. Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

## II. A COMMENT ABOUT THE LEGAL STANDARD FOR MOTION TO DISMISS

Plaintiffs argue that the motion to dismiss should be denied, in its entirety, because they have provided a "short and plain statement of the claim showing that the pleader is entitled to relief." Opp. 5:8. In support of their argument, Plaintiffs rely on the 1957 case of *Conley v. Gibson*, 355 U.S. 41 (1957). As Plaintiffs rightly point out, Justice Black did find that the complaint in that case sufficiently alleged a cause of action, and he explained that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

---

[1] Of course plaintiffs' theory of the case makes little sense. The question that is never answered anywhere in plaintiffs' 108-paragraph complaint or 19-page opposition is why would the bank choose to market products and services to a fast-growing segment of the population, only to turn around and discriminate against those very customers – including going so far as to hatch a "sting" operation with local and Federal law enforcement (as alleged in paragraph 21 of the complaint)?

-1-

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46. Of course what Plaintiffs omit from their opposition is the fact that the holding of *Conley* has been "questioned, criticized, and explained away" for decades – culminating in Justice Souter's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

As Defendants point out in their moving papers, *Twombly* requires plaintiffs to provide more than "labels and conclusions," and plead more than "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Indeed, Plaintiffs are required to plead specific factual allegations sufficient to "raise a right to relief above the speculative level." *Id*. But, as explained below and in the moving papers, Plaintiffs have ignored *Twombly*. The entire complaint is littered with naked assertions, conclusory allegations, and formulaic recitations of various causes of action. In fact, setting aside the irrelevant allegations about the bank's pilot program with the Mexican Consulate, the complaint contains very few specific factual allegations – and what is pleaded is not sufficient to plausibly support any of the claims for relief.

### III. PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

#### A. Martinez Concedes He Cannot State a Claim for Negligence Per Se

Defendants seek to dismiss Martinez's fourth cause of action for negligence per se because negligence per se is not a cause of action. Rather, it is an evidentiary presumption. Defendants' moving papers cite to cases like *Johnson v. Honeywell International*, *Das v. Bank of America*, and *Millard v. Biosources* as support for their argument that negligence per se is not a stand alone cause of action. Plaintiff makes no attempt to distinguish these cases or cite to contra authority. In fact, Plaintiff's opposition is conspicuously silent on this claim. Plaintiff's silence should be treated as an admission that his claim has no merit.

Therefore, the motion to dismiss should be granted <u>without leave to amend</u>.

#### B. Martinez's Does Not Plead Sufficient Facts to Plausibly Support His Four Claims Based on 42 U.S.C. § 1983

Defendants seek to dismiss Martinez's fifth through eighth causes of action based on 42 U.S.C. § 1983. Plaintiff does not allege facts to establish that either the Bank, or Aivaliklis, or

-2-

both, were engaged in state action. Instead, as discussed in the moving papers, Martinez baldly alleges that the Defendants and other unnamed parties chose to conspire and were willful participants engaged in joint action, with state officials in effecting the deprivation of PLAINTIFF'S freedom and rights." Compl., ¶12. Martinez repeats this same formulaic recitation of supposed "joint action" is paragraphs 22(c), 22(d), 24, 26, 29, 31, 37, 45—47, 51, 55, 58, 61, 74, 76, 82, 90 and 92.

Martinez spends nearly half of his opposition trying to convince the Court that Defendants' acts constitute state action. But he **fails to point to even one allegation** in the complaint. Martinez instead focuses the Court's attention on either Aivaliklis' declaration in support of Defendants' motion to strike, or on easily distinguishable case law.[2] Neither helps his cause.

As an initial matter, evidence outside the pleadings cannot generally be considered in deciding a rule 12(b)(6) motion. *Farr v. United States*, 990 F.2d 451, 454 (9th Cir.1993). Only the allegations in the complaint, and not Martinez's multiple references to Aivaliklis' declaration, should be considered.[3] See, e.g., Opp., p. 5 ("Notwithstanding Plaintiff's objections to the Declaration of Aivaliklis, and accepting Aivaliklis' Declaration at face value, Aivaliklis states ….").

### 1. Plaintiff's Complaint Does Not Establish Joint Action

Martinez argues in his opposition—though not in his complaint—that Aivaliklis held himself out as an official and created the "impression of color of authority" by asking to see Martinez's social security card. Opp., p. 6. By doing so, Martinez argues that this "particular action [reporting suspected crime to the police] is inextricably intertwined with those of the

---

[2] Nor does Martinez address, much less attempt to distinguish, any of the cases cited by Defendants in their moving papers.

[3] This is equally true regarding the exhibits attached to the declaration of Hank G. Greenblatt. Moreover, the entire Greenblatt declaration should be disregarded because it fails to establish appropriate foundations for the exhibits attached thereto. And the concluding paragraph is simply irrelevant argument.

-3-

1 | government, so as to qualify under the 'Joint Action' test". Opp., p. 7.  Martinez relies on *Lugar v. Edmondson Oil Co., Inc*., 457 U.S. 922 (1982) in support.

In *Lugar*, a private party obtained a writ of attachment from a state court against Lugar's property, and the county sheriff executed the writ. *Id*. at 924.  The Supreme Court confirmed that private party creditors participate in a "joint action" with state officials when they employ attachment procedures deemed to have violated the 14th amendment.  They become joint participates by "invoking the aid of state officials to take advantage of state-created attachment procedures." *Id*. at 942.

Lugar held "that for conduct by private parties to be under color of state law, it must be "fairly attributable to the State." *Id.*, 457 U.S. at 937.  The Court set forth a two-part test for making this determination:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible....
> Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id*.

Here, Martinez's fails to identify and allege that his deprivation was *caused* by the exercise of some right or created by the State.  Similarly, Martinez has not alleged that Aivaliklis is a state official, acted with a state official or obtained significant aid from a state official.

The only allegation suggesting that Aivaliklis "acted together with" a state actor is BofA's report to the police of suspected crime.  This is not enough.  As noted in BofA's moving papers, "merely complaining to the police does not convert a private party into a state actor." *Collins v. Womancare*, 878 F.2d 1145, 1145 (9th Cir. 1989); *see also Rivera v. Green*, 775 F.2d 1381, 1382-84 (9th Cir.1985) and *Lee v. Town of Estes Park*, 820 F.2d 1112, 1114 (10th Cir. 1987); *accord Howerton v. Gabica*, 708 F.2d 380, 382 n. 5 (9th Cir.1983) (private party deemed state actor only upon showing that police actively intervened and aided defendant on multiple occasions).  Martinez has not distinguished these cases, nor has he pointed to contrary authority.

Plaintiff's citations to *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001) and *Dennis v. Sparks*, 449 U.S. 24 (1980) are similarly unavailing. *Brentwood* holds that pervasive entwinement between government and ostensibly private organization to point of largely overlapping identity may establish joint action. And *Dennis* provides that allegations that an official act of the state court judge was the product of a corrupt conspiracy involving bribery of the judge were sufficient to assert action under color of state law on the part of the private parties. Martinez analogizes these holdings to bank regulation under the U.S.A. Patriot Act and concludes that because banks are regulated they must also be state actors. In addition to this argument being outside of the allegations alleged in the complaint, it also is without merit or legal support, and is directly contrary to the state actor test set out in *Lugar*, *supra*.

### 2. Plaintiff's Complaint Does Not Establish a Symbiotic Relationship

Martinez argues that there is a "symbiotic relationship" between the BofA and the police similar to the relationship involved in *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961). "In *Burton*, the Court held that the refusal of a restaurant located in a public parking garage to serve Negroes constituted state action. The Court stressed that the restaurant was located on public property and that the rent from the restaurant contributed to the support of the garage. In response to the argument that the restaurant's profits, and hence the State's financial position, would suffer if it did not discriminate, the Court concluded that this showed that the State profited from the restaurant's discriminatory conduct. The Court viewed this as support for the conclusion that the State should be charged with the discriminatory actions." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842-43 (1982).

Here, Martinez does not allege that BofA is located on public property or that it pays rent to a governmental agency. Martinez does not allege that BofA's profits would suffer if it did not discriminate. In fact, Martinez spends an extraordinary amount of time detailing how BofA has profited from providing services to the Hispanic market.

Martinez's "analysis" under Burton goes only so far as to claim that "Defendants were engaged in the very conduct as that of the Defendant in *Burton*". Opp., p. 10. This allegation is not just devoid of any factual basis, but it is offensive on its face.

Lastly, Plaintiff's attempt to argue that there was a symbiotic relationship between BofA and law enforcement contradicts the picture he paints in his opposition brief of Aivaliklis as lone ranger who deputized himself to "embark[] upon his own self-styled mission to detain and cause the arrest of Mr. Martinez." *See* Section III.D, *infra*.

Because Martinez has not alleged facts showing that Defendants engaged in state action, his § 1983 claims must be dismissed without leave to amend.

### C. Martinez Does Not Plead His Fraud Claim With the Requisite Specificity Required by Fed. R. Civ. Proc. R. 9(b)

Defendants seek to dismiss Martinez's tenth cause of action for misrepresentation because the claim is not pleaded with sufficient particularity or a "high degree of meticulousness." As pleaded, the complaint broadly alleges that the bank implemented a "pilot program … offering credit and banking accounts to undocumented Mexican immigrants, eliminating the need for a credit history and/or a social security number." Compl., ¶ 82. The complaint goes on to allege that the bank even entered into "agreements with the Mexican government." Compl., ¶ 83. Although Plaintiff uses these allegations as a springboard for his argument that it would be a misrepresentation by the bank if it did not offer products actually being advertised to the undocumented Mexican community, (Opp., 12:6-8), nowhere in the complaint does Martinez allege that the bank made *any* representations *to him* about the pilot program, credit products, or "the need for a credit history and/or a social security number."

Plaintiff does not dispute that Fed. R. Civ. Proc. R. 9(b) requires fraud claims to be pleaded with specificity. In fact, Plaintiff all but concedes his complaint lacks the requisite

-6-

specificity. He does not—and cannot—point to a single paragraph in the complaint that alleges what he was told, who told him, when he was told, and what he did in reliance.[4]

Instead, Plaintiff tries to distract the Court by returning to his unfounded accusation that Aivaliklis "deputized himself to dig deeper into Mr. Martinez' immigration status." Opp., 12:2. Of course, not only is Plaintiff mischaracterizing Aivaliklis' actions, but this accusation has nothing to do with his fraud claim. Whether or not Aivaliklis decided to lure Martinez to have him arrested and deported (he didn't) has nothing to do with whether or not the bank ever represented to Martinez whether he needed to provide a social security number to open a deposit account.

Because Plaintiff has not pleaded his misrepresentation claim with the required specificity, and because he has not bothered to explain how he can amend his complaint, the tenth cause of action should be dismissed <u>without leave to amend</u>.

### D. Martinez's Hybrid Conspiracy/Conversion/Misappropriation Claim Fails Because He Fails to Plead Sufficient Facts to Establish the Existence of Any Conspiracy Between Aivaliklis and Law Enforcement

Defendants seek to dismiss Martinez's hodgepodge eleventh cause of action for conspiracy, conversion, and misappropriation because the "claim" rests on an alleged conspiracy between the bank, Aivaliklis, the Marysville Police Department, and Immigration and Customs Enforcement, but Plaintiff fails to plead any facts that would establish at least one requisite elements of conspiracy: knowledge of an agreement to carry out a plan to harm Martinez.

Instead of pointing to specific allegations in the complaint that might establish the necessary elements of conspiracy, Plaintiff takes the unusual approach of suggesting that there

---

[4] Even assuming *arguendo* Martinez amends his complaint to allege that a specific bank employee told him that the bank's pilot program did not require him to have a social security number to open a deposit account, his claim would still fail. First, plaintiff's chronology of events would be inconsistent with his misrepresentation claim. Plaintiff admits that he had been a bank customer for over fourteen years. Compl., ¶ 10. And that he had three deposit accounts with the bank. Compl., ¶ 10. But plaintiff states that the bank did not begin its program with the Mexican consulate until 2007. Compl., ¶ 8. Accepting these allegations as true, it is not plausible to conclude that any bank employee misrepresented the bank's requirements for opening new deposit accounts. Second, Martinez can never plead facts plausibly establishing actual reliance because of the fact that he *did* provide his social security number when he opened a business checking account in February 2011.

-7-

was *no conspiracy at all*. Plaintiff makes no mention of the Marysville PD or Immigration and Customs Enforcement. He does not argue that buried somewhere in one of the 108 paragraphs of his complaint is the allegation that Aivaliklis had conversations with anyone from the two law enforcement agencies whereby a plan was hatched to "lure" Martinez to the bank, catch him with a fake social security care, and then deport him. Just the opposite. The opposition paints Aivaliklis as a lone ranger who "embarked upon his own self-styled mission to detain and cause the arrest of Mr. Martinez," (Opp., 3:18-19), who personally "lured Mr. Martinez to the branch," (Opp., 6:9), who "deputized himself to dig deeper into Mr. Martinez's immigration status," (Opp., 12:2), and who intended to "have [Martinez] arrested" (Opp., 12:26-27). These statements stand in direct contradiction to the core of the eleventh cause of action – that there was a conspiracy between Aivaliklis and law enforcement to harm Martinez.

In light of the fact that Plaintiff appears to have abandoned the contention that Aivaliklis conspired with law enforcement, the motion to dismiss the eleventh cause of action should be granted <u>without leave to amend</u>.

### E. The Twelfth Cause Of Action For Violation Of The Fair Housing Act Fails To State A Claim For Relief

Defendants seek to dismiss the twelfth cause of action for alleged violations of the Fair Housing Act (42 U.S.C. § 3601, et seq.) because the complaint is unclear on its face what the alleged bad act was and how it constitutes a violation of the Fair Housing Act. In his complaint, Martinez alleges only that he "dutifully and regularly paid his mortgage," (Compl., ¶ 95), that "while seeking a modification" he learned his mortgage "has been frozen," (Compl., ¶96), and that be believes the mortgage was "frozen" "because of his race, ethnicity or immigration status" (Compl. ¶ 97). Without more, these "naked allegations" are insufficient to state a plausible claim for relief under the *Twombly* and *Iqbal* standards. Plaintiff's allegations are simply too general, too vague, and too uncertain to establish a viable claim under the Fair Housing Act.

Among other things, the Defendants and the Court are left to wonder what it means that the mortgage was "frozen." Martinez concedes that he is not certain what "frozen" means, but that he is "merely repeating the terms used by Defendant's representatives." Opp., 14:9-10.

1   Taking Martinez at his word, how then can he possibly establish that the "freezing" of his

2   mortgage violates any provision of the Fair Housing Act.  If he's not sure what "freezing" means,

3   then he cannot credibly allege that "freezing" his mortgage somehow violated a specific provision

4   of the Fair Housing Act.

5   　　　Furthermore, what specific provision of the Fair Housing Act does Plaintiff allege

6   Defendants violated?  Generally, the Fair Housing Act prohibits discrimination in the sale or

7   rental of dwellings, (42 U.S.C. § 3604), discrimination in the "residential real estate-related

8   transactions" (42 U.S.C. § 3605) and discrimination in providing "brokerage servicers" (42

9   U.S.C. § 3606).  But nowhere in his twelfth cause of action or his opposition does Plaintiff

10  explain what specific provision Defendants violated.

11  　　　Similarly, Martinez offers no argument of explanation to support his naked assertion that

12  "freezing" his mortgage constitutes a violation of the Fair Housing Act.  Again, one unanswered

13  questions is what specific provision of the Fair Housing Act is Plaintiff talking about and how

14  does "freezing" the mortgage constitute a violation?

15  　　　Lastly, even if Plaintiff had pointed the Defendants and the Court to a specific provision

16  of the Fair Housing Act and explained how "freezing" the mortgage constitutes a violation, what

17  specific facts does Martinez rely on to support his belief that the Defendants "froze" his mortgage

18  because of his race?  The answer is none.

19  　　　For these reasons, Defendants respectfully request that twelfth cause of action be

20  dismissed <u>without leave to amend</u>.

21

　　　**F.**　　**Plaintiff's Thirteenth Cause of Action for Declaratory Relief Fails to State a**
22　　　　　　**Claim for Relief Because It Is Based on His Defective Fair House Act Claim**

23  　　　Defendants seek to dismiss Plaintiff's thirteenth cause of action for declaratory relief

24  because it is simply too uncertain.  Plaintiff alleges, in the most general fashion, that Defendants

25  "created a cloud upon the title of [his] home," (Compl., ¶ 100), because the bank "acted to freeze

26  [his] mortgage because of his race, ethnicity or immigration status in clear violation of [the Fair

27  Housing Act]" (Compl., 101.)  However, for the reasons just explained above, Plaintiff has not

28  pleaded sufficient facts to support his claim for a violation of the Fair Housing Act.  Nor has he

-9-

even bothered to indicate which provision within the Fair Housing Act defendant's allegedly violated. Without more, there is simply no foundation to support Plaintiff's request for declaratory or injunctive relief. And for this reason, the thirteenth cause of action should be dismissed <u>without leave to amend</u>.

### G. Plaintiffs' Fails to Plead Sufficient Facts to Support Their False Imprisonment Claim

Defendants seek to dismiss Plaintiffs fourteenth cause of action for false imprisonment for two reasons: the complaint does not plead sufficient facts to establish a plausible claim that the Defendants restrained either of the Plaintiffs, but even if it did, the Defendants' conduct at all times was lawful.

The complaint never actually alleges sufficient facts to establish an essential element of the claim – restraint. With respect to Martinez, although he alleges that he arrived at the bank "for what he believed would be a brief meeting," (Compl., ¶ 103), and that he "had been entreated by Mr. Aivaliklis to come to the bank under false pretenses," (Compl., ¶ 104), Martinez was never prevented from simply getting up and walking out of the bank. Although he goes on to allege that his "phone was taken away from him," (Compl. ¶ 104), Martinez never argues in his opposition that this is tantamount to being restrained. Nor does he provide any legal authority to support such a proposition. Despite pleading 108 paragraphs over 41 pages, Martinez alleges no facts to plausibly establish that the Defendants used a *physical barrier*, or *physical force*, or *threats of force* to deprive Martinez of freedom of movement. And as even Plaintiff acknowledges in his opposition, these are essential elements of his claim. Opp., 15:5-11.

With respect to Metzly M., the complaint admits that she was never restrained. In fact, she admits that she left the bank with her mother. (Compl. ¶ 106.) Although the complaint states that "[t]he bank manager refuses [sic] to allow [Metzly M.] to use the bathroom," (Compl., ¶ 105), it goes on to admit in the very next sentence that she used the bathroom. (Compl., ¶ 106.) Moreover, like Martinez, no facts are alleged on behalf of Metzly M. to establish that the Defendants used a *physical barrier*, or *physical force*, or *threats of force* to deprive her of freedom of movement.

-10-

But even if Plaintiffs could amend their complaint to honestly allege sufficient facts to establish a plausible false imprisonment claim, the claim would still fail because detention based on a lawful arrest, is not actionable. Plaintiffs concede this point by making no attempt whatsoever to distinguish the relevant case law, including *Moore v. City & County of San Francisco*, 5 Cal. App. 3d 728, 735 (1970) and *Peterson v. Robison*, 43 Cal.2d 690, 696 (1954). Furthermore, Martinez does not even dispute that his arrest was lawful.

For these reasons, then, Defendants respectfully request that the motion to dismiss the fourteenth cause of action be granted <u>without leave to amend</u>.

## IV.   CONCLUSION

Plaintiffs want to litigate everything but the facts of this case. They point to the fact that the bank marketed its banking products and services to undocumented Mexican immigrants. They accuse the bank of then turning around and discriminating against those very same customers by setting-up a sting with law enforcement to check IDs. At no time do Plaintiffs ever acknowledge the simple fact that Martinez opened a bank account using a fake social security card that he purchased almost two decades ago. At no time do they acknowledge that the bank's fraud detection unit caught the phony SSN which prompted the bank manager to ask Martinez to come to the branch. At no time do they acknowledge that Martinez was arrested because of his fake SSN. The very few relevant facts Plaintiffs do allege are simply not enough to support the causes of action they plead against the bank and its manager. Bank of America and Aivaliklis respectfully request that the Court look past the rhetoric and hyperbole, look to the relevant fact alleged, and decide whether those facts are sufficient to plausibly support the claims pleaded.

DATED:  March 2, 2012

SEVERSON & WERSON
A Professional Corporation

By:      /s/ *Mark I. Wraight*
              Mark I. Wraight

Attorneys for Defendants
BANK OF AMERICA, N.A.
and ALEX AIVALIKLIS

-11-

# CERTIFICATE OF SERVICE
*Luis Martinez-Rodriguez, et al. v. Bank of America, et al.*
U.S. District Court, Northern California, Case No. CV11-6572 (CRB)

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA 94111.

On the date below I served a copy, with all exhibits, of the following document(s):

**BANK OF AMERICA N.A.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FED. R. CIV. P., RULE 12(B)(6)]**

on all interested parties in said case addressed as follows:

| | |
|---|---|
| Luis Alfonso Cespedes, Esq.<br>Law Offices of Luis A. Cespedes<br>701 E St #C<br>Sacramento, CA 95814 | *Attorneys for Plaintiff*<br>Telephone:  (916) 443-8465<br>Facsimile:   (916) 446-7412 |

☑ **(BY MAIL)** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California, in sealed envelopes with postage fully prepaid.

| | |
|---|---|
| Hank G. Greenblatt, Esq.<br>Dreyer Babich Buccola Wood, LLP<br>20 Bicentennial Circle<br>Sacramento, CA 95826 | *Attorneys for Plaintiff*<br>Telephone:  (916) 379-3500<br>Facsimile:   (916) 379-3599<br>Email:   hgreenblatt@dbbc.com, dbunnell@dbbc.com |

☑ **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in San Francisco, California, on March 2, 2012.

*/s/ Juli A. Carter*
Juli A. Carter