1  MARK I. WRAIGHT (State Bar No. 228303)
   ANDREW S. ELLIOTT (State Bar No. 254757)
2  SEVERSON & WERSON
   A Professional Corporation
3  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
4  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
5  Email:  ase@severson.com

6  Attorneys for Defendants
   BANK OF AMERICA, N.A.
7  and ALEX AIVALIKLIS

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11  LUIS MARTINEZ-RODRIGUEZ,                 Case No.:  CV11-6572 (CRB)
    individually and METZLY M., a minor by and
    through her guardian ad litem, SYLVIA    **REPLY RE MOTION TO**
12  VILLALPANDO,,                            **STRIKE PURSUANT TO**
                                             **CCP 425.16 (Anti-SLAPP)**
13              Plaintiffs,
                                             Hearing Date:    March 16, 2012
14       vs.                                 Time:            10:00 a.m.
                                             Judge:           Hon. Charles R. Breyer
15  BANK OF AMERICA; ALEX AIVALIKLIS;        Dept.:           Courtroom 8, 19th Floor
    and DOES 1 through 30, inclusive,,       Complaint Date:  December 21, 2011
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ...................................................................................... 1

I.      INTRODUCTION ............................................................................................. 1

II.     MARTINEZ'S CLAIMS ARISE FROM PROTECTED ACTIVITY .............................. 2

        A.      Allegations Regarding BofA's Marketing Efforts to Undocumented
                Workers and Whether Social Security Numbers are Required to Open a
                Bank Account are Irrelevant and Do Not Address BofA's Moving
                Papers ................................................................................................. 2

        B.      BofA's Report to Police Was Protected,  Not Illegal or Discriminatory,
                Conduct ................................................................................................ 3

        C.      Reporting Suspected Criminal Activity to the Police is Protected
                Activity ................................................................................................ 4

III.    MARTINEZ CANNOT SHOW A PROBABILITY OF PREVAILING ON
        THE CHALLENGED CLAIMS ........................................................................... 6

        A.      Civil Code Section 47(b) Immunizes BofA's Investigation And Report ............... 6

        B.      The Annunzio-Wylie Act Immunizes BofA's Investigation And Report .............. 9

                1.      Filing SAR Report is not Required ..................................... 9

                2.      BofA Does Not Seek to Strike Martinez's Claims  Concerning
                        Alleged Constitutional Violations ..................................... 9

                3.      Established Canons of Statutory Interpretation Compel the
                        Conclusion that "Government Agency" Includes State Police
                        Under the Annunzio-Wylie Act ...................................... 10

                4.      There is no Good Faith Requirement Under the Annunzio-Wylie
                        Act ........................................................................ 11

IV.     CONCLUSION ............................................................................................ 12

DEFENDANTS' RESPONSES TO PLAINTIFFS' EVIDENTIARY OBJECTIONS ................ 13

70001/0080/2142561.1

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Corley v. U.S.*,
   556 U.S. 303 (2009) ........................................................................... 10

*Flores-Figueroa v. United States*,
   556 U.S. 646 (2009) ............................................................................. 5

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ............................................................................. 10

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (1999) ........................................................................ 9, 11

*Lopez v. First Union Nat'l Bank*,
   129 F.3d 1186 (11th Cir. 1997) ....................................................... 9, 11

*Plymale v. City of Fresno*,
   2009 WL 1810765 (E.D. Cal. 2009) ..................................................... 7

*Stoutt v. Banco Popular de Puerto Rico*,
   320 F.3d 26 (1st Cir. 2003) ............................................................. 9, 11

**STATE CASES**

*Chabak v. Monroy*,
   154 Cal.App.4th 1502 (2007) ................................................................ 4

*ComputerXpress, Inc. v. Jackson*,
   93 Cal.App.4th 993 (2001) ................................................................... 4

*Equilon Enterprises v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002) ........................................................................... 6

*Flatley v. Mauro*,
   39 Cal.4th 299 (2006) .................................................................... 3, 4, 7

*Fontani v. Wells Fargo Investments*,
   129 Cal.App.4th 719 (2005) ................................................................. 4

*Hagberg v. California Federal Bank FSB*,
   32 Cal.4th 350 (2004) .............................................................. 4, 6, 7, 8

*Jacob B. v. County of Shasta*,
   40 Cal.4th 948 (2007) .......................................................................... 7

-ii-

*Kashian v. Harriman*,
  98 Cal.App.4th 892 (2002) ........................................................................4

*Kibler v. Northern Inyo County Local Hosp. Dist.*,
  39 Cal.4th 192 (2006) ...............................................................................4

*Lefebvre v. Lefebvre*,
  199 Cal.App.4th 696 (2011) ...................................................................3, 4

*Mann v. Quality Old Time Service, Inc.*,
  120 Cal.App.4th 90, 103-04 (2004) ...........................................................4

*Montes-Rodriguez v. People*,
  241 P.3d 924 (Colo. 2010) .........................................................................5

*Paul for Council v. Hanyecz*,
  85 Cal.App.4th 1356 (2001) ......................................................................6

*Ribas v. Clark*,
  38 Cal.3d 355 (1985) .................................................................................7

*Rubin v. Green*,
  4 Cal.4th 1187 (1993) ............................................................................7, 9

*Rusheen v. Cohen*,
  37 Cal.4th 1048 (2006) ..........................................................................7, 8

*Salma v. Capon*
  161 Cal.App.4th 1275 (2008) ....................................................................4

*Siam v. Kizilbash*
  (2005) 130 Cal.App.4th 1563 (2005) ........................................................4

*Silberg v. Anderson*,
  50 Cal.3d 205 (1990) .............................................................................7, 8

*Wilcox v. Superior Court*,
  27 Cal.App.4th 809 (1994) ........................................................................6

*Williams v. Taylor*,
  129 Cal.App.3d 745 (1982) ........................................................................8

-iii-

**FEDERAL REGULATIONS AND STATUTES**

Code of Federal Regulations
    Title 12, § 208.20...................................................................................................9

United States Code
    Title 31,
        § 101 .........................................................................................................10
        § 5312 .......................................................................................................11
        § 5318 ..............................................................................................9, 10, 11

**STATE STATUTES**

Cal. Civil Code
        § 47 ...............................................................................................6, 7, 8, 9

Cal. Code of Civil Procedure
        § 425.16 .................................................................................................1, 5

Cal. Penal Code
        § 470 ........................................................................................................5, 6
        § 530.5 .....................................................................................................5, 6
        § 148.5 .........................................................................................................3

## I.    INTRODUCTION

Defendants Bank of America, N.A. (the "Bank") and Alex Aivaliklis ("Aivaliklis") (collectively referred to as "BofA") have moved to strike plaintiff Luis Martinez-Rodriguez's ("Martinez") causes of action for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, negligence per se, negligent supervision, misrepresentation and conspiracy under California's Anti-SLAPP statute, Code Civ. Proc., § 425.16.

Like his opposition to BofA's motion to dismiss, Martinez spends much wasted energy discussing the Bank's programs for undocumented workers and whether social security numbers are required to open new accounts.  What the opposition fails to do, and what Martinez fails to address, are the facts and applicable Anti-SLAPP case law.

Whether required or not, it is undisputed that Martinez used a fake social security number to open a checking account with the Bank.  The social security number was flagged by the Bank's fraud department and Aivaliklis asked Martinez to come into the branch to verify the social security number.  Martinez presented a fraudulent social security card, which he admitted he purchased years before.  Aivaliklis, suspecting a crime was afoot, phoned the Marysville police department to investigate.  The Marysville police showed up, conducted their own investigation and arrested Martinez.  Martinez does not dispute, much less challenge with evidentiary any support, that his claims arise from the foregoing facts.

Martinez also fails to overcome well established law that reporting suspected criminal activity to the police is conduct in the furtherance of the constitutionally protected right of petition or free speech.  And under the Anti-SLAPP statute, because BofA's report to the police forms a substantial part of the factual basis for each of Martinez's claims, each claim must be stricken unless Martinez establishes a probability of prevailing on that claim's merits. Martinez cannot satisfy his burden.  BofA's report to the police is absolutely protected by the litigation privilege and the Annuzio-Wylie Act.  Martinez does not allege and cannot prove any basis for his claims independent of that report.  Nor can he establish any factual basis for his claims that BofA discriminated against him on the basis of race.

-1-

For these reasons, Martinez's claims must be stricken.  As the defendant prevailing on an Anti-SLAPP motion to strike, BofA is also entitled to an award of its attorney's fees and costs.

## II.   MARTINEZ'S CLAIMS ARISE FROM PROTECTED ACTIVITY

Martinez does not dispute that his claims are based on and arise out of BofA's report to the police.  Instead, Martinez argues that California's Anti-SLAPP does not apply because, (1) BofA offered various banking services and programs specifically tailored to undocumented workers, (2) social security numbers are not required to open accounts at BofA, (3) BofA's police report was not made in good faith, and finally, (4) using another's social security number is not a crime.  These arguments are either irrelevant, contrary to the evidence, or simply without merit.

### A.   Allegations Regarding BofA's Marketing Efforts to Undocumented Workers and Whether Social Security Numbers are Required to Open a Bank Account Are Irrelevant and Do Not Address BofA's Moving Papers

Martinez spends much of his complaint and opposition discussing BofA's banking programs offered generally to the Latino population and more specifically to undocumented workers.  The sine-qua-non of Martinez's argument is that a social security number is not required by BofA in order to open a bank account.[1]  Opp. pp. 4-7.  And from there Martinez makes the analytical leap that because social security numbers are not required, BofA must have discriminated against him when it sought to authenticate the social security number he had used just days prior to the incident to open an account.  But as shown below, Martinez's argument falls apart in the face of evidence submitted by BofA showing the underlying facts of this incident.

Whether it was required or not, Martinez opened an account with BofA on February 9, 2011 using his social security number ending in 8932.  Aivaliklis Decl., ¶5, Ex. A.  BofA flagged the account after its fraud department determined that the social security number used by Martinez did not belong to him.  Aivaliklis was asked to verify the social security number—not simply Martinez's identity as the opposing papers argue.  Aivaliklis did so by calling Martinez into the branch and reviewing the social security card.  It was an obvious fake

---

[1]  BofA does not disagree.  Depending on the circumstances, various other forms of identification are acceptable to open an account.

-2-

1    and Martinez admitted it was phony.  Aivaliklis called the police.  Martinez made the same

2    admission to the police.

3            While Martinez takes great pains to attack the admissibility and veracity of Aivaliklis'

4    declaration, he does not dispute that he opened an account on February 9, 2011 or that he used his

5    social security number ending in 8932 to do so.  Martinez does not dispute that he was called into

6    the branch or that he purchased the phony social security card years before.  Finally, Martinez

7    admits he was arrested.  Martinez does not, and indeed cannot, offer an alternative version of

8    events.

9            **B.      BofA's Report to Police Was Protected,
10                      Not Illegal or Discriminatory, Conduct**

11           Martinez argues that Aivaliklis' police report is not protected speech because it was

12   discriminatory and made with malice, and thus not a protected exercise of petition or free speech

13   rights.  Though not cited by Martinez, this species of argument is addressed in *Flatley v. Mauro*,

14   39 Cal.4th 299 (2006) and *Lefebvre v. Lefebvre*, 199 Cal.App.4th 696 (2011).

15           *Flatley* carved a narrow exception to the Anti-SLAPP statute's protection:

16                   [W]here a defendant brings a motion to strike under section 425.16
                     ... but either the defendant concedes, or the evidence conclusively
17                   establishes, that the assertedly protected speech or petition activity
                     was illegal as a matter of law, the defendant is precluded from using
18                   the Anti-SLAPP statute to strike the plaintiff's action.

19   *Flatley,* 39 Cal.4th at 320.

20           *Lefebvre* applied that rule to a case in which the trial court had found that the record

21   "conclusively" established that the defendants' statements to the police were an "illegal activity"

22   under Penal Code section 148.5, which makes it a crime to report a felony or misdemeanor to the

23   police "knowing the report to be false" at the time the report is made.  *Lefebvre,* 199 Cal.App.4th

24   at 701.  Not surprisingly, *Lefebvre* held there is no constitutionally protected right to file

25   perjurious police reports.  *Id.* at 703.

26

27

28

1    *Lefebvre* did not cite, much less suggest it overturned, the long list of cases holding that

2    that non-perjurious reports to the police or other law enforcement agencies are activity protected

3    under the Anti-SLAPP statute.[2]

4    This case falls in the latter category.  Here, unlike *Lefebvre*, there is nothing establishing,

5    conclusively or otherwise, that Aivaliklis' police report was "illegal activity."  Martinez has not

6    alleged—and certainly has not "conclusively established"—that Aivaliklis made his report with

7    discriminatory intent or with malice.  Martinez has nothing to go on other than his subjective

8    inference which he draws from the fact that he is an undocumented Mexican and *therefore*

9    Aivaliklis "deputized himself to dig deeper into Mr. Martinez' immigration status."  Opp. p. 12.

10   Quite to the contrary, Martinez's subjective inferences are refuted by evidence showing

11   BofA had objective, non-racially motivated reasons for calling the police.  *See* Aivaliklis' Decl.

12   Thus, Martinez cannot "raise a triable issue of fact on the question whether [BofA] or its

13   employees were motivated by racial or ethnic prejudice of their treatment of plaintiff."  *Hagberg*

14   *v. California Federal Bank FSB*, 32 Cal.4th 350, 376 (2004).

15   In short, *Lefebvre* and *Flatley* are easily distinguishable.  They do not support Martinez's

16   claim that Aivaliklis' police report was unprotected by the Anti-SLAPP statute.

17   **C.    Reporting Suspected Criminal Activity to the Police is Protected Activity**

18   Martinez's final arguments concerning the first-prong analysis under the Anti-SLAPP

19   statute are equally without merit.

20   First, Martinez argues that using another social security number is not a crime, and

21   therefore, BofA did not report an actual crime.  Opp. p. 8-9.  While Martinez's argument is

22   factually incorrect given, among other things, that the Marysville Police arrested Martinez for

23

24   _____

         [2] See *Chabak v. Monroy,* 154 Cal.App.4th 1502, 1511-12 (2007) (report to police); *Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569-70 (2005) (report of suspected child abuse to police and child welfare agency); *see also Salma v. Capon* 161 Cal.App.4th 1275, 1286-87 (2008) (contacting municipal department seeking official investigation); *Fontani v. Wells Fargo Investments,* 129 Cal.App.4th 719, 728-30 (2005), disapproved on other grounds, *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal.4th 192, 203 n. 5 (2006) (report to NASD); *Mann v. Quality Old Time Service, Inc.*, 120 Cal.App.4th 90, 103-04 (2004) (report to EPA and CHP Hazmat of illegal dumping of toxic pesticide); *Kashian v. Harriman*, 98 Cal.App.4th 892, 899-901 (2002) (letter to Attorney General requesting investigation); *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1009 (2001) (filing complaint with SEC).

25

26

27

28

1   forgery (Cal. Penal Code § 470(a)) and unauthorized use of personal identification (Cal. Penal

2   Code § 530.5), it also fails address the Anti-SLAPP's first prong analysis of whether Martinez's

3   claims arise from protected activity.

4          The Anti-SLAPP statute protects "*any written or oral statement or writing* made in

5   connection with an . . . official proceeding authorized by law." Cal. Code Civ. Proc.,

6   §425.16(e)(2) (emphasis added). The Anti-SLAPP statute does not require defendants to prove

7   that the complained-of act is actually a crime, but simply that the oral statement was made in

8   connection with an official proceeding. And as several Courts have previously held, a report to

9   police of any *suspected* crime is protected activity. *See* footnote 2, supra.

10          Martinez's reliance on *Flores-Figueroa v. United States*, 556 U.S. 646 (2009) and

11   *Montes-Rodriguez v. People*, 241 P.3d 924 (Colo. 2010), reh'g denied (Nov. 30, 2010) is similarly

12   misplaced because neither decision addresses Anti-SLAPP analysis, and also because both are

13   distinguishable. Contrary to Martinez's assertions, neither case holds that "using another social

14   security number is not a crime" under any circumstance. Rather, these opinions address specific

15   statutes and what evidence is required to convict under those specific statutes. Importantly, they

16   do not address California statutes regarding forgery or unauthorized use of personal information.

17   *See* Cal. Penal Code §§ 470(a)) and 530.5.

18          Second, Martinez argues, without *any* evidentiary support, that BofA comes "to the Court

19   with the equivalent of unclean hands".[3] Martinez asks "What if Mr. Aivaliklis had battered

20   Plaintiff, because he believed he was 'an illegal alien?' Could he then assert such conduct to be

21   constitutionally protected because he was 'detaining a suspected criminal?' " Martinez's

22   rhetorical questions demonstrate his fundamental misunderstanding of the Anti-SLAPP statute.

23   *Speech*, not physical battery, is protected if made in connection with an official proceeding

24   authorized by law. Cal. Code Civ. Proc., §425.16(e)(2).

25          Finally, and surprisingly, Martinez asserts that because BofA has not shown that

26   Martinez's suit was brought primarily to chill a valid exercise of its Constitutional rights, BofA's

27   _____

28       [3] Martinez's claim that BofA's conduct constituted illegal activity is addressed at Section
II, B, *supra*.

-5-

REPLY RE MOTION TO STRIKE
Case No.: CV11-6572 (CRB)

motion should be denied.  Even a cursory review of Anti-SLAPP case law, however, shows that the California Supreme Court rejected this additional requirement and disapproved of a string of cases so holding.[4]  *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 58 (2002) (A defendant who moves under the Anti-SLAPP statute to strike a cause of action as a strategic lawsuit against public participation (SLAPP), in order to prevail, has no burden to demonstrate that the cause of action was brought with the intent of chilling the defendant's exercise of constitutional speech or petition rights).

## III.   MARTINEZ CANNOT SHOW A PROBABILITY OF PREVAILING ON THE CHALLENGED CLAIMS

### A.   Civil Code Section 47(b) Immunizes BofA's Investigation And Report

Martinez argues that Section 47 is inapplicable because BofA does not identify a specific "criminal activity to which they believe they may rest the privilege upon."  Opp. p. 13. Martinez's premise is false[5], but more importantly, it is irrelevant.

As set forth more fully in the moving papers, California's litigation privilege "serves the important public policy of assuring free access to the courts and other official proceedings.  It is intended to assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing. . . .  Hence, ***without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice***, courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings."  *Hagberg*, 32 Cal.4th at 360-361 (citations omitted) (emphasis added).

Martinez does not offer any supporting authority for the extraordinary position that Section 47 applies only where the proponent can identify a specific crime.  Indeed, this position is

---

[4]  These include *Paul for Council v. Hanyecz*, 85 Cal.App.4th 1356 (2001) and *Wilcox v. Superior Court*, 27 Cal.App.4th 809 (1994), both of which are cited by Martinez in support of his opposition.

[5]  Martinez used a fake social security number to obtain banking services, and was subsequently arrested for forgery (Cal. Penal Code § 470(a)) and unauthorized use of personal identification (Cal. Penal Code § 530.5).  Aivaliklis Decl., ¶¶5-18 and Elliott Declaration, Ex. A.

-6-

1  antithetical to Section 47's broad purpose of affording free access to governmental services.  As

2  *Hagberg* aptly notes, "[t]he privilege is based on the importance of providing to citizens free and

3  open access to governmental agencies for the reporting of suspected illegal activity."  *Id*., at 362

4  (citations omitted).  A citizen, without respect to whether it is made in good faith or even with

5  malice, need only communicate a *suspected* crime.

6       Martinez also argues that Section 47 does not apply to race base claims.  Martinez is

7  wrong.  In *Hagberg*, the California Supreme Court avoided deciding whether § 47(b) bars

8  liability for a racially motivated false police report, holding instead that Hagberg had not

9  established the claim factually.  *Id.*, at 375-76.  This Court *could* follow the same approach:

10  avoid the question of § 47(b)'s application to race discrimination claims and strike Martinez's

11  claim for lack of evidence of racial animus.  However, there is no need to sidestep the legal issue.

12  The California Supreme Court's post-*Hagberg* decisions confirm what its pre-*Hagberg* decisions

13  also predict—namely, that when the high court *does* reach the issue it will hold that the absolute

14  litigation privilege precludes race discrimination claims just as it bars all other constitutional,

15  statutory, or common law claims other than malicious prosecution.  One Eastern District of

16  California decision has already reached that conclusion, applying § 47(b)'s absolute privilege to

17  bar a race discrimination and retaliation claim under California's Fair Employment and Housing

18  Act.  *Plymale v. City of Fresno*, 2009 WL 1810765, at *17 (E.D. Cal. 2009).

19       As *Plymale* points out, "[t]he section 47(b) privilege is 'absolute' and 'bars all tort causes

20  of action except a claim for malicious prosecution.' "  The California Supreme Court has stated

21  that principle repeatedly.  *See Jacob B. v. County of Shasta,* 40 Cal.4th 948, 960 (2007); *Rusheen*

22  *v. Cohen,* 37 Cal.4th 1048, 1057 (2006)*; Flatley*, 39 Cal.4th at 322; *Hagberg,* 32 Cal.4th at 360;

23  *Silberg v. Anderson,* 50 Cal.3d 205, 215 (1990).  The Supreme Court has also held that § 47(b)'s

24  absolute privilege bars not only common law tort claims, but claims founded on statute or even

25  the California Constitution.  *See Jacob B.,* 40 Cal.4th at 961; *Rubin v. Green,* 4 Cal.4th 1187,

26  1201 (1993); *Ribas v. Clark,* 38 Cal.3d 355, 364-65 (1985).

27       Admittedly, racial animus is a base motive that California law strongly condemns.  Yet

28  bad motive does not distinguish race discrimination from other claims that the California Su-

-7-

REPLY RE MOTION TO STRIKE
Case No.:  CV11-6572 (CRB)

1  preme Court has found barred by § 47(b)'s absolute privilege.  Perjury, for example, is surely a

2  wrong that is equally abhorrent in the eyes of the law—particularly as it subverts the very judicial

3  mechanism for righting other injustices.  Nevertheless, no matter how base the perjurer's motives,

4  § 47(b) bars claims against him for his crime.  *See Silberg,* 50 Cal.3d at 217.

5  Broad application of § 47(b)'s absolute privilege is essential to furthering its underlying

6  purpose of "assur[ing] utmost freedom of communication between citizens and public authorities

7  whose responsibility is to investigate and remedy wrongdoing."  *Hagberg,* 32 Cal.4th at 360; *Sil-*

8  *berg,* 50 Cal.3d at 213.  "[T]he external threat of liability is destructive of this fundamental

9  right …."  *Silberg,* 50 Cal.3d at 213.

10  Though the California Supreme Court has repeatedly recognized that the absolute charac-

11  ter of the § 47(b) privilege occasionally exacts a steep price, it has nevertheless insisted that ab-

12  solute immunity must be preserved in order to achieve § 47(b)'s important purposes.  *Rusheen*, 37

13  Cal.4th at 1058; *Silberg,* 50 Cal.3d at 218.  "The importance of providing to citizens free and

14  open access to governmental agencies for the reporting of suspected illegal activity outweighs the

15  occasional harm that might befall a defamed individual."  *Hagberg,* 32 Cal.4th at 365 (*quoting is*

16  *Williams v. Taylor,* 129 Cal.App.3d 745, 753-54 (1982)).  As the high court said in rejecting the

17  notion that § 47(b)'s privilege could be claimed only when the privileged communication was

18  made "in the interests of justice":

19  > [W]hile the added moral consideration injected by the [interest-of-
20  > justice test] may seem attractive, on further reflection it is seen to
   > be a drastic departure from precedent and largely destructive of the
   > principal purpose of the litigation privilege. It would permit deriva-
21  > tive tort suits in many, if not most, cases on the ground that an
   > otherwise privileged communication was not made for the purpose
22  > of promoting justice, a charge easily and quickly made by an adver-
   > sary.

23

24  *Silberg,* 50 Cal.3d at 217.

25  The same reasoning precludes a race discrimination exception to § 47(b)'s absolute privi-

26  lege.  Allegations of race discrimination—or discrimination on some other impermissible basis—

27  are easily made, as Martinez's complaint illustrates.  Allowing a race discrimination exception to

28  the privilege would, therefore, permit derivative tort suits in many, if not most, cases arising from

1   police reports.  That potential liability would deter citizens from volunteering information to the

2   police and other law enforcement personnel—a harm to society in general that outweighs the

3   occasional uncompensated injury to a particular plaintiff from a racially motivated police report.

4          As the California Supreme Court observed in applying § 47(b) to bar another statutory

5   claim:  "If the policies underlying section 47(b) are sufficiently strong to support an absolute

6   privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a

7   conveniently different label for pleading what is in substance an identical grievance arising from

8   identical conduct as that protected by section 47(b)."  *Rubin*, 4 Cal.4th at 1203.

9          **B.      The Annunzio-Wylie Act Immunizes BofA's Investigation And Report**

10               **1.      Filing SAR Report is not Required**

11          Contrary to Martinez's argument (Opp., p. 14), the Annunzio-Wylie Act is not limited to

12   disclosures made in a Suspicious Activity Report ("SAR").[6]  Section 5318(g)(3)(a) applies to any

13   voluntary disclosure of "any possible violation of law"; it is not limited to reports of money

14   laundering or similar crimes that are the particular focus of the Bank Secrecy Act in which the

15   Act was codified.[7]  See *Lopez v. First Union Nat'l Bank*, 129 F.3d 1186, 1192 (11th Cir. 1997).

16   In its author's words, the Act was intended to provide "the broadest possible exemption from civil

17   liability for the reporting of suspicious transactions."  *Stoutt v. Banco Popular de Puerto Rico*,

18   320 F.3d 26, 31 (1st Cir. 2003).

19
               **2.      BofA Does Not Seek to Strike Martinez's Claims
20                       Concerning Alleged Constitutional Violations**

21          Martinez contends that the safe harbor provision under the Annunzio-Wylie Act does not

22   apply to alleged violations under the United States Constitution.  Martinez Opp. P. 14 ("Perhaps

23

24          [6]  In fact, banks are forbidden to even release the fact that a SAR has been filed.  See *Lee
     v. Bankers Trust Co*., 166 F.3d 540, 544 (1999) ("Financial institutions are required by law to file
25   SARs, but are prohibited from disclosing that either a SAR has been filed or the information
     contained therein.") (citing 12 C.F.R. § 208.20(k) (1998)).

26
          [7]  The immunization provision clearly applies both to 'disclosure[s] pursuant to this
27   subsection' (e.g. a SAR) and to any 'voluntary disclosure of any possible violation of law.'
     31 U.S.C. 5318(g).  This latter clause is far broader than the former, and reaches disclosures that
28   have nothing to do with SARs.

-9-

1    most fatal to Defendants application of the Annunzio-Wylie Act ….).  But the Court need not

2    trouble itself with considering the issue.  BofA has not moved to strike Martinez's federal claims

3    under Section 1983, as a more careful reading of BofA's moving papers would show.  *See* BofA's

4    Supporting Memorandum at pp. 1, 6.  BofA moves to strike Martinez's state law claims for

5    negligence (first cause of action), negligent infliction of emotional distress (second cause of

6    action), intentional infliction of emotional distress (third cause of action), negligence per se

7    (fourth cause of action), negligent supervision (ninth cause of action), misrepresentation (tenth

8    cause of action), and conspiracy (eleventh cause of action).  And these challenged claims fall with

9    the Annuzio-Wylie Act's safe harbor provision immunizing BofA for alleged violations of "any

10   constitution, law or regulation of [California]".  31 U.S.C. §5318(g)(3)(A).

11   **3.    Established Canons of Statutory Interpretation Compel the
12   Conclusion that "Government Agency" Includes State Police Under
     the Annunzio-Wylie Act**

13          According to Martinez, the term "government agency" under the Annunzio-Wylie Act

14   does not include state police because "agency" is defined under 31 U.S.C. §101 as "a department,

15   agency, or instrumentality of the United States Government."  Martinez is incorrect.

16          "The rule against superfluities complements the principle that courts are to interpret the

17   words of a statute in context."  *Hibbs v. Winn*, 542 U.S. 88, 101 (2004).  In other words, "[a]

18   statute should be construed so that effect is given to all its provisions, so that no part will be

19   inoperative or superfluous, void or insignificant."  *Id.* (citations omitted); *see also Corley v. U.S.*,

20   556 U.S. 303, 320 (2009) (describing the rule against superfluities as "one of the most basic

21   interpretive canons").

22          Under the safe harbor provision at 31 U.S.C. § 5318(g), the word "government" modifies

23   the word "agency".  This modification is wholly redundant if, as Martinez argues, the safe harbor

24   definition of "government agency" already includes a "department, agency, or instrumentality of

25   the **United States Government**".  31 U.S.C. §101 (emphasis added).  The rule against

26   superfluities thus compels an interpretation of 31 U.S.C. § 5318(g) that avoids that result - *viz.*, an

27   interpretation under which the safe harbor provision includes reports to both state and federal

28   government agencies such as the Marysville police.

-10-

1    This interpretation is also consistent with legislative intent.  "The Act broadly and

2    unambiguously provides for immunity from *any* law (except the federal Constitution) for *any*

3    statement made in an SAR by *anyone* connected to a financial institution."  *Lee*, 166 F.3d at 544

4    (emphasis original).  If the Act is meant to encourage financial institutions to report suspected

5    crimes by providing blanket immunity, surely that intent extends to reports to state government

6    officials.

7           **4.       There is no Good Faith Requirement Under the Annunzio-Wylie Act**

8           Martinez tries to avoid the Annunzio-Wylie Act's immunity by claiming that Aivaliklis

9    did not make his disclosure to the police in good faith.  Though *Lopez* read a "good faith"

10   requirement into § 5318(g)(3)(A), two later Court of Appeal opinions have squarely rejected that

11   embroidery on the Act's clear language.  *Compare Lopez*, 129 F.2d at 1192-93 with *Stoutt*, 320

12   F.3d at 31-32 and *Lee*, 166 F.3d at 544.  As *Lee* points out, "[t]he Act broadly and unambiguously

13   provides for immunity from any law … [t]here is not even a hint that the statements must be

14   made in good faith in order to benefit from immunity.  *Lee*, 166 F.3d at 544.  Moreover, § 5318's

15   legislative history shows that an express good faith requirement for immunity was dropped from

16   an early draft of the bill and was not included in the Act as ultimately adopted by Congress.  *Id.* at

17   545; *Stoutt,* 320 F.3d at 31.  Courts cannot add a limitation that Congress expressly considered

18   and rejected.

19          Aivaliklis' police report about what he thought was a suspected crime fall squarely within

20   the Act's immunity.  Aivaliklis is an employee of BofA, a "financial institution" within the Act's

21   meaning.  31 U.S.C. § 5312(a)(2)(A).  Aivaliklis' call and report were "voluntary disclosures."

22   They concerned a possible violation of law, obtaining bank services with a fake social security

23   number.  They were made to a government agency, the police.  Hence, the Act applies,

24   immunizing both Aivaliklis and his employer, BofA, from civil liability.

25

26

27

28

-11-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### IV.     CONCLUSION

For the reasons stated above and in BofA's opening memorandum, the Court should grant the motion, strike Martinez's first, second, third, fourth, ninth, tenth and eleventh claims as against BofA, deny Martinez leave to amend, and thereafter award BofA its attorney's fees and costs.


DATED:  March 2, 2012                    SEVERSON & WERSON
                                         A Professional Corporation

                                         By:_____/s/ *Andrew S. Elliott*_____
                                                     Andrew S. Elliott

                                         Attorneys for Defendants
                                         BANK OF AMERICA, N.A.
                                         and ALEX AIVALIKLIS

-12-

**DEFENDANTS' RESPONSES TO PLAINTIFFS' EVIDENTIARY OBJECTIONS[8]**

Plaintiffs' object to virtually every sentence of the Declaration of Alex Aivaliklis. Plaintiffs' make three basic objections: that the declaration contains inadmissible hearsay, that Aivaliklis lacks personal knowledge, and that the declaration contains improper expert opinion testimony by Aivaliklis. None of the objections have merit.

First, throughout his declaration, Aivaliklis establishes his personal knowledge of the facts and circumstances of this case. Among other things, Aivaliklis establishes that he was the branch manager working at the Marysville branch on the day in question. (Paras. 1 and 3.) He establishes that his duties include serving as the custodian of records and further established his familiarity with the manner by which the bank's business records are prepared and maintained. (Para. 2.) And he establishes his personal knowledge of his communications with the bank's fraud prevention group, Mr. Martinez-Rodriguez, and the Marysville Police department. (Paras. 6, 8, 9, 11, 13, 14, 15, 17, and 18.)

Second, plaintiffs' objection that the Aivaliklis' declaration "is replete with obvious hearsay statements for which no exception exists" is inaccurate and based on a misapplication of the hearsay rule. Statements made in the declaration about things Aivaliklis said to Mr. Martinez-Rodriguez and the Marysville Police department are not hearsay. They are not hearsay because they are either not offered for the truth of the matter[9], have independent legal significance[10], or

---

[8]    Per Local Rule 7-3(c), "Any evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."

[9]    Fed. R. Evid. 801(c). E.g. "I told Mr. Martinez that I was still trying to verify his social security card and number, and that it would be a few more minutes until I was able to complete the process." (Para. 15.)

[10]    Fed. R. Evid. 801(c). E.g. "I told the dispatcher that I was the Banking Center Manager at the Marysville Bank of America and advised that I suspected a customer was committing a crime" (Para. 14.) This statement has independent legal significance because it establishes how and when BofA first contacted authorities to report a suspected crime. See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group (2006) ¶ 8:1042, pp. 8D-9 to 8D-10 ("The hearsay rule is not implicated where the issue is whether certain things were said or done, and not whether those things were true or false. In such event, the out-of-court statement or conduct has independent legal significance (whether or not the content is true and despite the declarant's credibility) and is admissible nonhearsay to prove the words were spoken or the act was done.").

-13-

1   are offered to show the effect on someone else.[11]  Similarly, statements in the declaration about

2   things Mr. Martinez-Rodriguez said are not hearsay because they are admissions by a party-

3   opponent.[12]

4        Third, plaintiffs' objection that the Aivaliklis declaration contains inadmissible expert

5   opinions is wrong.  Although plaintiffs' characterize Mr. Aivaliklis as "consider[ing] himself a

6   member of law enforcement" and attempting "to offer an expert opinion on the manufacture and

7   design of a Social Security card," the declaration does no such thing.  At most, the Aivaliklis

8   declaration offers an admissible lay opinion.  Fed. R. Evid. 701.  Aivaliklis' statements are

9   limited to what he has perceived, (thousands of social security card, including Mr. Martinez-

10  Rodriguez's social security card), are helpful to a clear understanding of Aivaliklis' declaration,

11  (it provides the context for why he called the Marysville Police department), and is not based on

12  scientific, technical, or other specialized knowledge. The Aivaliklis' declaration simply does not

13  contain any expert opinions.

14       Plaintiffs also objects to the three exhibits attached to Mr. Aivaliklis' declaration.

15  Likewise, these objections have no legal merit.

16       The first exhibit is the signature card Mr. Martinez-Rodriguez signed in February 2011.

17  However, this exhibit is not inadmissible hearsay because it qualifies under the business records

18  exception.  Fed. R. Evid. 803(6).

19       The second two exhibits are pictures of the Marysville BofA branch.  Both of these

20  exhibits are relevant because they depict the "office" where Mr. Martinez-Rodriguez alleges he

21  was detained.  In reality, the alleged "office" was a cubicle visible to the rest of the banking

22  center.  Moreover, neither of these exhibits are hearsay because they are not a "statement."  Fed.

23

24       [11]    Fed. R. Evid. 801(c).  E.g. "I asked Mr. Martinez to come into the Branch and for
    him to bring his social security card," (para. 8), "I then asked Mr. Martinez to hand me his social
25  security card," (para. 11), "I asked Mr. Martinez where he obtained the social security card"
    (para. 13.)  These statements show the effect on Mr. Martinez-Rodriguez because in response to
26  Mr. Aivalikis' statements he (a) came to the bank, (b) provided his social security card, and (c)
    told Mr. Aivalikis how, when, and where he obtained his social security card.

27       [12]    Fed. R. Evid. 801(d)(2).  E.g. "Mr. Martinez said OK and handed me his social
    security card," (para. 11), "Mr. Martinez admitted to me that he bought the card in San Francisco
28  approximately 17 years ago" (para. 13.)

R. Evid 801(a).  But even if the Court were to find that visual depictions of the Marysville branch do constitute out of court statements, the pictures are not reasonably susceptible to traditional concerns about trustworthiness that underlie the hearsay rule.  Therefore, the hearsay objections should be overruled based on the residual exception in Fed. R. Evid. 807.


DATED:  March 2, 2012

SEVERSON & WERSON
A Professional Corporation

By:_____/s/ *Andrew S. Elliott*_____
                        Andrew S. Elliott

Attorneys for Defendants
BANK OF AMERICA, N.A.
and ALEX AIVALIKLIS

70001/0080/2142561.1

REPLY RE MOTION TO STRIKE
Case No.:  CV11-6572 (CRB)

1

**CERTIFICATE OF SERVICE**
*Luis Martinez-Rodriguez, et al. v. Bank of America, et al.*

2

U.S. District Court, Northern California, Case No. CV11-6572 (CRB)

3

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I

4

am employed in the City of San Francisco, California; my business address is Severson &

5

Werson, One Embarcadero Center, Suite 2600, San Francisco, CA  94111.

6

On the date below I served a copy, with all exhibits, of the following document(s):

7

**REPLY RE MOTION TO STRIKE PURSUANT TO CCP 425.16 (Anti-SLAPP)**

8

on all interested parties in said case addressed as follows:

9

10

Luis Alfonso Cespedes, Esq.
Law Offices of Luis A. Cespedes
701 E St #C

11

Sacramento, CA 95814

*Attorneys for Plaintiff*
Telephone:  (916) 443-8465
Facsimile:   (916) 446-7412

12

☑ **(BY MAIL)**  By placing the envelope for collection and mailing following our ordinary

13

business practices.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and

14

mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California, in sealed envelopes with postage fully prepaid.

15

Hank G. Greenblatt, Esq.
Dreyer Babich Buccola Wood, LLP

16

20 Bicentennial Circle
Sacramento, CA 95826

*Attorneys for Plaintiff*
Telephone:  (916) 379-3500
Facsimile:   (916) 379-3599
Email:  hgreenblatt@dbbc.com, dbunnell@dbbc.com

17

18

☑ **(BY ELECTRONIC SERVICE)**  Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The

19

Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

20

I declare under penalty of perjury under the laws of the United States of America that the

21

foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  This declaration is executed in San

22

Francisco, California, on March 2, 2012.

23

Juli A. Carter

24

25

26

27

28

70001/0080/2147671.1