IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS MARTINEZ-RODRIGUEZ, et al.,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, et al.,<br><br>    Defendants.<br>_____/ | No. C 11-06572 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE** |

    Plaintiffs Luis Martinez-Rodriguez and Metzly M., his daughter, have sued Bank of America and Alex Aivaliklis, one of its branch managers (collectively, "the Bank"). They assert a string of claims against the Defendants for conduct in February 2011 that culminated in the detention and arrest of Martinez-Rodriguez, who then was an undocumented Mexican immigrant. Most of the claims derive from state law. The Complaint additionally brings claims under Section 1983 and Title VIII.

    The Bank now moves to dismiss the Complaint on two grounds. First, it argues that about half of the causes of action fail to state a claim. It therefore seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). Next, the Bank contends that the remaining claims must be stricken pursuant to California's anti-SLAPP law, Section 425.16 of the California Code of Civil Procedure.

    For the reasons discussed below, the Court GRANTS both Motions.

## I.     BACKGROUND[1]

Martinez-Rodriguez was a Mexican immigrant without documentation when he entered the Bank's branch in Marysville, California, on February 22, 2011. What he did have were three accounts with and a mortgage loan from the Bank. In fact, despite his lack of proof of legal residency, Martinez-Rodriguez and the Bank had enjoyed a mutually beneficial and uneventful business relationship for 14 years.

Martinez-Rodriguez visited the branch that day because Aivaliklis had asked Martinez-Rodriguez to come in to address "irregularities" with an account he had just opened. With his long-standing relationship with the Bank in mind, Martinez-Rodriguez agreed to do so.

Soon after Martinez-Rodriguez and his daughter arrived, however, the Bank detained them "without sufficient authority, deprived them of their liberty and compelled them to remain where they did not wish to remain." When he tried to call his wife so she could pick up their daughter – "so that she would not be present for his humiliating and upsetting experience[]" – Aivaliklis took his cell phone away and "refused to allow [him] to call someone" else to retrieve the girl. When Metzly asked to go to the bathroom, Aivaliklis denied her request, relenting only on the condition that she be accompanied by a male bank officer.

Martinez-Rodriguez asserts that the whole thing was a setup: Aivaliklis, the Bank and unidentified "Does" conspired to lure him in so that they could "arrange" for his arrest by the Marysville police and the U.S. Department of Immigration and Customs Enforcement ("ICE"). On this theory, Martinez-Rodriguez sued on December 21, 2011. He alleges (1) negligent failure to train, (2) negligent and intentional infliction of emotional distress, (3) "negligence per se," (4) four claims under 42 U.S.C. § 1983, (5) negligent supervision, monitoring and training, (6) misrepresentation and fraud, (7) conversion, (8) a violation of Title III of the Civil Rights Act of 1968 (the "Fair Housing Act"), and (9) false

---

[1]   The background derives from the Complaint.

1  imprisonment. Martinez-Rodriguez also seeks declaratory relief enjoining the Bank from
2  foreclosing on his home.

3       The Bank argues that some of the causes of action do not state a legal claim and must
4  be dismissed. Mot. to Dismiss ("MTD") (dkt. 16) at 1. It moves to strike the rest under
5  California's anti-SLAPP statue. Mot. to Strike ("MTS") (dkt. 17) at 1.

## II. MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. As it determines the sufficiency of the challenged pleadings, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

If a court grants a motion to dismiss, it generally must allow the plaintiff leave to amend, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). The question of futility turns on whether the complaint could be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

### B. Discussion

The Bank attacks ten causes of action as legally insufficient.

#### 1. Negligence Per Se

First, it correctly asserts that "negligence per se" is not a cause of action but instead "an evidentiary presumption that affects the standard of care in a cause of action for

negligence."[2] MTD at 3. (quoting Johnson v. Honeywell Int'l, Inc., 179 Cal. App. 4th 549, 555-56 (2009)). Accordingly, the Court GRANTS the Motion as to this "claim."

### 2. Section 1983 Claims

The Bank next argues that none of Martinez-Rodriguez's four 1983 claims involve state action. MTD at 3. To state a Section 1983 claim, a plaintiff must show that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

A nominally private entity cannot be liable under Section 1983 unless its conduct effectively constitutes state action. See Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (citation omitted). There are four scenarios in which a private party's conduct may constitute state action: (1) the entity serves a public function, (2) it acted in concert with the state, (3) it acted under government compulsion or coercion, or (4) its conduct has a "close nexus" with the state and therefore "may be fairly treated as that of the state itself." Id. at 1092-1095.

The claims here essentially derive from Aivaliklis' telephone call and the detention of Martinez-Rodriguez and his daughter until the police and ICE arrived. See, e.g., Compl. ¶ 55 ("Defendants . . . unlawfully and intentionally conspired to detain unlawfully and falsely imprison" Martinez-Rodriguez and his daughter "after requesting him to come to the bank under false pretenses."). Martinez-Rodriguez does not allege any facts suggesting that such conduct constitutes state action under either the government compulsion or nexus tests. See generally Compl. ¶¶ 55-78. The Complaint does appear to allege joint action. It also might allege that the Bank carried out a public function. See id. ¶ 23.

---

[2] Martinez-Rodriguez has not responded to this assertion. See generally, Opp'n to MTD at 5-15.

As discussed below, Martinez-Rodriguez has not stated a claim under either theory.[3] These causes of action, therefore, must be dismissed.

### a. Joint Action

A Section 1983 claim may lie against a private party who "is a willful participant in joint activity with the State or its agents." Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970) (citations omitted). Thus, Martinez-Rodriguez can establish joint action if he can show that the Bank and the police "somehow reached an understanding" to lure him into the Bank and to arrest him in a manner that violated his rights. See id. The "inquiry focuses on whether the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity[.]" Collins v. Womancare, 878 F.2d 1145, 1154 (9th Cir. 1989) (citations and internal quotation marks omitted).

For example, the Ninth Circuit found a policeman and a landlord engaged in joint activity when the officer substantially involved himself in the eviction of one of the landlord's tenants. See Howerton v. Gabica, 708 F.2d 380, 385 (9th Cir. 1983). The officer "was on the scene at each step of the eviction." Id. at 384. He accompanied the landlord as she spoke to the tenants at least three times and once made an unannounced visit of his own to urge the tenants to leave. See id. at 381-82. In short, the cumulative effect of the officer's conduct "created an appearance that the police sanctioned the eviction." See id. at 384. On the other hand, "merely complaining to the police does not convert a private party into a state actor." Collins, 878 F.2d at 1155 (citation omitted).

Martinez-Rodriguez argues that "[c]ertainly Defendant acted together with the police when he called to report a 'suspected crime.'" Opp'n to MTD at 8:11-12. But he has pleaded nothing in the Complaint to support this conclusion. Instead, Martinez-Rodriguez

---

[3] Martinez-Rodriguez argues that the Bank engages in state action because it is heavily regulated and because it demanded to see his identification to comply with federal banking laws. Opp'n to MTD at 8-9. These arguments, even if they were convincing, do not reflect the allegations in the Complaint. Martinez-Rodriguez does not base his harm on the Bank's financial services, which of course is what the government actually regulates, nor does he make any assertions that anyone asked him for any identification.

5

has pleaded that "Defendants and Does . . . were willful participants engaged in joint action, with state officials in effecting the deprivation of Plaintiff's freedom and rights, when they initiated his detention . . . and held him until his arrest by law enforcement." Compl. ¶ 12. Similarly conclusory accusations of conspiracy and/or "joint action" with "state officials" appear elsewhere, but Martinez-Rodriguez never provides any factual allegations to support his theory that government officials were involved in the Bank's allegedly unlawful conduct. See ¶¶ 22(d), 31, 45, 62.

Accordingly, Martinez-Rodriguez has failed to sufficiently allege that the Bank engaged in "joint action" with the state. See DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) ("a bare allegation of . . . joint action will not overcome a motion to dismiss; the plaintiff must allege facts tending to show that [the defendants] acted under color of state law . . . .") (citation and internal question marks omitted).

### b. Public Function

Martinez-Rodriguez raises another state-action theory by claiming that the Bank "substituted [its] judgment for that of the police, thereby exercising state power[.]" Compl. ¶ 23. This, too, falls short.[4] See Kirley, 326 F.3d at 1093 ("when private individuals . . . are endowed by the State with powers or functions governmental in nature, they become agencies . . . of the State."). Martinez-Rodriguez has not pleaded facts to show that the state "endowed" the Bank with the authority to "substitute[ its] judgment for that of the police[.]" He therefore has not sufficiently alleged that the Bank was carrying out a public function.

Because Martinez-Rodriguez has not alleged facts sufficient enough to fairly attributed the Bank's conduct to the state, the Court GRANTS the Motion as to these claims.

### 3. Misrepresentation & Fraud

Here, the Bank asserts that Martinez-Rodriguez has not alleged fraud with the required specificity. MTD at 7.

---

[4] He raises a similarly unavailing argument in his Opposition: "Defendant's conduct is no different than a thug on a sidewalk demanding to see someone's papers, and threatening to call the police. Such conduct is inappropriate and clearly falls within the intent and purpose of Section 1983." Opp'n to MTD at 11:12-15.

6

A plaintiff must plead fraud specifically and not generally. See Fed. R. Civ. Proc. 9(b). The allegation must "be specific enough to give defendants notice of the particular misconduct . . . ." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (citations and quotation marks omitted). That is, it "must set forth what is false or misleading about a statement, and why it is false." Id. (citation and quotation marks omitted).

The elements of fraud are: (1) a false representation of a material fact, (2) knowledge of the falsity, (3) intent to induce another into relying on the representation, (4) reliance on the representation, and (5) resulting damage. Ach v. Finkelstein, 264 Cal. App. 2d 667, 674 (1968).

Martinez-Rodriguez asserts throughout the Complaint that the Bank began in 2007 to wage a coordinated campaign to capture an expanding, but largely untapped consumer sector: "the Hispanic segment." See e.g., Compl. ¶ 8. Among other tactics, this effort led to Bank policies that "eliminat[ed] the need for credit histories, social security numbers or other traditionally required methods of identification for bank accounts, and credit cards." Id. Martinez-Rodriguez further alleges that the Bank's "representations concerning the extension of credit to the undocumented Mexican immigrants were false when made and were known to be false when made." Id. ¶ 84. Likewise, the Bank's "representations concerning the [February 2011] meeting were [knowingly] false when made . . . ." Id. These representations apparently were false because the Bank was "not willing to commit sufficient resources, staffing, staff training/education, or services to insure that an incident similar to the one at hand did not occur." Id. In short, the Bank "had the intent to mislead him into believing that the Bank of American did, and does, in fact, cater to the immigrant segment, and believed he would be properly served." Id. ¶ 85.

As the Bank points out, Martinez-Rodriguez has not alleged that the Bank made any representations specifically to him about the availability of banking services for undocumented immigrants. Nor has he alleged, other than by offering a conclusory

7

assertion, that the representations were false.[5] And, in perhaps the most glaring omission, Martinez-Rodriguez has not alleged how the Bank knew its representations were false. Instead, he flatly states that its representations "were known to be false when made." Compl. ¶ 84. This is not enough to meet the heightened standard of Rule 9(b).

Accordingly, the Court GRANTS the Motion as to this claim.

### 4. Conspiracy, Conversion & Misappropriation

The Bank attacks this claim solely on the grounds that Martinez-Rodriguez has failed to allege a conspiracy. MTD at 7-8. A civil conspiracy requires that the accused conspirators have both "actual knowledge that a tort is planned" and the "intent to aid in its commission." See Favila v. Katten Muchin Rosenman, LLP, 188 Cal. App. 4th 189, 206 (2010) (citation and quotation marks omitted).

The Complaint is devoid of anything other than conclusory allegations that the Defendants knew they were engaging in a conspiracy. Martinez-Rodriguez has not alleged any facts to support a reasonable inference that the Bank and Aivaliklis acted in concert to convert his money.[6]

The lack of a properly alleged conspiracy, however, takes the Bank only so far. That is because a civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on" the conspirators. See Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11 (1994). Martinez-Rodriguez need not allege a conspiracy to hold the Defendants liable for conversion. See Michael v. Jeffrey B., 158 Cal. App. 3d 1059, 1069 (1984) ("The plaintiff may state a cause of action against several persons by merely alleging that the named defendants committed the acts.").

However, the Court finds that Martinez-Rodriguez still has not stated a conversion

---

[5] The only apparent effort to show how the representations were false is the supposed disconnect between the Bank's vow to serve the "Hispanic segment" in certain ways and its unwillingness to effectively carry it out. See Compl. ¶ 84. But a half-hearted effort to carry out a service does not, by itself, make the offer of that service a lie.

[6] Indeed, as the Bank points out, Martinez-Rodriguez has asserted that Aivaliklis "embarked upon his own self-styled mission to detain and cause the arrest of Mr. Martinez" and who "deputized himself to dig deeper into Mr. Martinez's immigration status." Opp'n to MTD at 3, 12.

8

claim. A conversion claim for money lies "only where defendant interferes with plaintiff's possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." Kim v. Westmoore Partners, Inc. 201 Cal. App. 4th 267, 284 (2011) (citations and quotation marks omitted). Accordingly, "bank accounts generally cannot be the subject of conversion, because they are not specific money, but only an acknowledgment by the bank of a debt to its depositor." Reliance Ins. Co. v. U.S. Bank of Wash., N.A. 143 F.3d 502, 506 (9th Cir. 1998) (citation omitted).

Martinez-Rodrigeuz has not pleaded a specific possessory interest in an identifiable sum. Therefore, he has not stated a claim for conversion.

### 5. Fair Housing Act & Declaratory Relief

The Bank challenges this claim on the basis that it is unclear what conduct the Bank has been charged with. MTD at 8.

To sufficiently plead a claim under the Fair Housing Act, Martinez-Rodriguez must provide, at a minimum, "fair notice" of the basis for his claims. See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1061-62 (citing Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002)). Under Twombly, of course, the pleaded facts must "nudge [his] claims across the line from conceivable to plausible." See Twombly, 550 U.S. at 570-71.

Martinez-Rodriguez claims that the Bank discriminated against him in violation of the Fair Housing Act, "which prohibits discrimination in the sale, rental and financing of dwellings . . . ." Compl. ¶ 97. But the Complaint does not sufficiently give the Bank "fair notice" of the basis for this allegation. It is not entirely clear what provision of the Act he claims the Bank violated.[7] The claim rests upon the allegation that "while seeking a loan modification on his mortgage," Martinez-Rodriguez discovered "that his mortgage . . . has been frozen." Compl. ¶ 95. He asserts that the Bank "gave no reason for taking this action" and that the Bank did so as a "retaliatory action" taken only after learning of Martinez-Rodriguez's immigration status and his instigation of this lawsuit. Id. ¶ 96. This conduct,

---

[7] Martinez-Rordriguez does invoke 42 U.S.C. § 3604 early in the Complaint. See ¶ 2. But in any event he has not alleged how the Bank's conduct violated that, or any other, section of the Act.

9

1 engaged in because of his "race, ethnicity or immigration status[,]" violates Title VIII of the
2 Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.* Id. ¶ 97.

3 The Bank argues that this claim is deficient because it is unclear what a "frozen"
4 mortgage is.[8] MTD at 8. The Court is not sure what it means either. Even if it was obvious
5 what it meant, Martinez-Rodriguez has failed to allege how a frozen mortgage harmed him
6 and how it can be said that the Bank froze his account because of his race. In other words,
7 Martinez-Rodriguez has not put the Bank on "fair notice" about the basis for his claim.[9]

8 Accordingly, the Court GRANTS the Motion as to this claim.[10]

9 The declaratory and injunctive relief Martinez-Rodriguez seeks in his thirteenth cause
10 of action derives entirely from his Title VIII claim. See Compl. ¶¶ 100-101. He specifically
11 requests that the Court enjoin the Bank "from continuing its conduct which has adversely
12 affected the title" to Martinez-Rodriguez's property and from foreclosing on his home. Id. ¶
13 101. He also wants the Court to require the Bank "to take all actions necessary to cure
14 defects in title resulting from its freezing mortgages . . . ." Id.

15 "Declaratory relief is only appropriate '(1) when the judgement will serve a useful
16 purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate
17 and afford relief from the uncertainty, insecurity, and controversy giving rise to the
18 proceedings.'" Guerra v. Sutton, 783 F.2d 1371, 1376 (9th Cir. 1986) (citation omitted).
19 Issuing a judgment in a case without an actual controversy is an advisory opinion, which is
20 prohibited by the Constitution. Hillblom v. United States, 896 F.2d 426, 430 (9th Cir. 1990).

21 Martinez-Rodriguez's request for declaratory and injunctive relief is based entirely on
22 his Fair Housing Act claim, which has been dismissed. There is no controversy for the Court

---

[8] Martinez-Rodriguez contends that he is merely using the language that the Bank used when its representatives "describ[ed] the status of Plaintiff's loan." Opp'n to MTD at 14. But he does not explain, in the Complaint or his Opposition, what that means, how such conduct harmed him, and how such harm was inflicted in violation of Title VIII. Efforts to rephrase the conduct as "'putting on hold,' 'suspending,' and so forth" do not help. See id.

[9] With leave to amend, he could start by pinpointing which provision of the Act he contends the Bank violated.

[10] The Complaint asserts only subject-matter jurisdiction. Compl. ¶ 2. It is not immediately clear whether diversity jurisdiction exists in this action.

10

1 to address through the requested relief. The Court therefore GRANTS the Motion here as
2 well.

### 6. False Imprisonment

"Under California law, the elements of a claim for false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time, however brief." Young v. County of Los Angeles, 655 F.3d 1156, 1169 (9th Cir. 2011) (citation and quotation marks omitted).

The Bank challenges the legal sufficiency of this claim on two grounds. First, it argues that the Complaint insufficiently alleges that the Bank restrained Martinez-Rodriguez and his daughter. MTD at 9. Alternatively, it contends that the Bank's conduct was lawful. Id.

#### a. Restraint

A person restrains another for the purposes of false imprisonment by using "physical force, threat of force or of arrest, confinement by physical barriers, or by means of any other form of unreasonable duress." Fermino v. Fedco, Inc., 7 Cal. 4th 701, 715 (1994) (citations omitted). "Words or conduct furnishing a reasonable apprehension on the part of the one restrained that he will not be allowed to depart is sufficient." Schanafelt v. Seaboard Finance Co., 108 Cal. App. 2d 420, 423 (1952) (citation omitted) (citing Vandiveer v. Charters, 110 Cal. App. 347 (1930)).

The Complaint contains sufficient allegations to support an inference that Martinez-Rodriguez and his daughter reasonably apprehended that they could not leave. It asserts that Aivaliklis took Martinez-Rodriguez's cell phone away from him as he tried to call his wife to come pick up their daughter.[11] Compl. ¶ 104. Martinez-Rodriguez alleges that the Bank "compelled [he and his daughter] to remain where they did not wish to remain" and that as his "primary language is Spanish . . . [he] was uncertain as to what was happening." Id. ¶

---

[11] It is reasonable to infer that Martinez-Rodriguez was calling someone else to pick up Metzly because he felt that he could not leave. Even if he did not then feel restrained, he almost surely would have felt so after Aivaliklis took his phone. See Restatement (Second) of Torts § 40A cmt. a, illus. 2 (2011) (restraint by duress where store owner A takes B's purse and its "large sum of money," without lawful authority, "for the purpose of preventing B . . . from leaving the store" and B reasonably believes that she can leave only at risk of losing her purse and money).

11

1 104, 107. Moreover, the refusal to allow a six-year-old to use the restroom until after "some
2 difficult negotiations and over Mr. Martinez's objections," id. ¶ 105, could reasonably lead
3 the child and her father to presume that they no longer had control of their own freedom of
4 movement.[12]

5 Accordingly, Martinez-Rodriguez and Metzly have stated sufficient facts to allege
6 restraint.

### b. Lawfulness of Conduct

8 The Bank next contends that even if it did restrain the pair, it acted lawfully and so
9 cannot be liable for false imprisonment. MTD at 9. This argument rests on the fact that
10 Martinez-Rodriguez was subsequently arrested and that "[i]mprisonment based upon lawful
11 arrest is not false, and is not actionable in tort."[13] Id. n.9 (citing Moore v. City & County of
12 San Francisco, 5 Cal. App. 3d 728, 735 (1970); Peterson v. Robison, 43 Cal. 2d 690, 696
13 (1954)).

14 The Bank's cited cases, however, concern detentions that happened after an arrest.
15 See MTD at 9 n.9. This case involves the reverse scenario: a lawful arrest based upon an
16 alleged false imprisonment. The Bank's assertion that its report to the police was lawful says
17 nothing about its conduct leading up to that report. Its statement at hearing that a detention
18 leading to a lawful arrest is not actionable reflects a misreading of the cases the Bank has
19 provided to support the point.

20 For example, Moore involved an arrest by police and continued detention in jail after
21 the plaintiff posted bail. See 5 Cal. App. 3d at 736-37. Peterson involved a "citizen's arrest"
22 authorized by one police agency after the plaintiff already had been arrested by another
23 police agency. See 43 Cal. 2d at 692-93. These situations are not like this case, and the
24 reasoning behind those cases – which examines the lawfulness of the imprisonment through

---

25 [12] Martinez-Rodriguez has asserted several other facts related to his detention that are not in the Complaint and therefore are not considered for the purposes of this motion. See generally Martinez-Rodriguez Decl. (dkt. 21, Ex. 2).

27 [13] Martinez-Rodriguez never claims that his arrest by the police, nor anything that happened after he was arrested, was unlawful. He likewise does not address the Bank's argument that its restraint of him and his daughter was lawful, choosing instead to state simply that the two were restrained. See Opp'n to MTD at 15.

12

1 the prism of a preceding lawful arrest – does not necessarily apply to a situation where a
2 person is held against their will and then is lawfully arrested. Therefore, the Bank's cases do
3 not fully support its argument that the detention of Martinez-Rodriguez and Metzly was
4 lawful.

5     What does support that contention, however, is that it seems clear that the Bank made
6 a lawful citizen's arrest and that its conduct, therefore, cannot constitute false imprisonment.

7     Section 837(1) of the California Penal Code authorizes a citizen's arrests "[f]or a
8 public offense committed or attempted in [a private person's] presence." This includes
9 arrests for misdemeanors if they occur in the citizen's presence. See Johanson v. Dep't of
10 Motor Vehicles, 36 Cal. App. 4th 1209, 1216 (1995). At hearing, Martinez-Rodriguez's
11 attorney contended that citizen's arrests must comply with certain formalities that Section
12 837 requires. But a citizen's arrest may be implied by the circumstances surrounding the
13 detention and arrest. See id. at 1217 (finding a valid citizen's arrest where the citizen
14 "witnessed the offense, summoned the officer, reported his observations, and pointed out the
15 suspect.").

16     In Johanson, a parking-garage attendant signed a citizen's arrest form to show that he
17 was arresting a drunken driver for mischief and vandalism of garage property, but not for
18 driving under the influence. Id. at 1213. The California Court of Appeal held that the
19 citizen's arrest for driving under the influence was implied because the attendant had
20 detained the driver and "impliedly delegated his authority" to make the arrest to the police
21 officer who arrived on the scene. Id. at 1217. Though the attendant did not tell the driver
22 that he was under arrest for the specific offense of driving under the influence, and while he
23 did not state the charge on the formal citizen's-arrest form, the court found an implied
24 citizen's arrest for drunken-driving. Id. It reasoned that "[w]hile [the attendant] did not utter
25 or write the 'magic words,' the substance of his actions constituted a valid citizen's arrest."
26 Id. (emphasis added).

27     Likewise, in People v. Harris, the California Court of Appeal found a lawful citizen's
28 arrest in the absence of either a citizen's arrest form or "magic words." See 256 Cal. App. 2d

13

1 455, 459 (1967). There, a motorist pulled over the defendant after seeing him collide with a
2 vehicle and continue to drive away. Id. at 457. The motorist asked the defendant to show his
3 identification and for him to wait where he had stopped the vehicle. Id. at 458. The
4 defendant complied, and the police ultimately arrived and arrested him after briefly talking to
5 the citizen-motorist. Id. The motorist never himself told the defendant that he was under
6 arrest, "but such is not required where the accused is pursued immediately after the offense."
7 Id. at 459 (citing Cal. Pen. Code § 841; Allen v. McCoy, 135 Cal. App. 500, 508 (1933)).

8 Here, it is evident that Aivaliklis believed that Martinez-Rodriguez was committing a
9 crime in his presence and called the police.[14] Martinez-Rodriguez did not leave and felt that
10 he could not because the Bank had restrained him. The police arrived and subsequently
11 arrested Martinez-Rodriguez, who does not dispute the lawfulness of that arrest. Because he
12 does not do so, he cannot attack his confinement, which constituted part of the implied
13 citizen's arrest. See Harris, 256 Cal. App. 2d at 460 ("An arrest is more than a transient
14 momentary incident. . . . Black's Law Dictionary (4th ed.) page 140, defines arrest as 'The
15 apprehending or detaining of the person in order to be forthcoming to answer an alleged or
16 suspected crime.'").

17 Accordingly, the Court GRANTS the Motion as to the false imprisonment claim.
18 Therefore, the Court GRANTS the Motion as to the claims for (1) negligence per se,
19 (2) Section 1983 conduct, (3) misrepresentation and fraud, (4) conversion, (5) Title VIII
20 violations, and (6) false imprisonment.

21 The negligence per se claim is dismissed with prejudice. Martinez-Rodriguez shall
22 have leave to amend the remaining claims.

23 **III. Anti-SLAPP**

24 The Bank also moves to strike several claims under the theory that they "arise[] from
25 BofA's reporting a suspected crime to the police." MTS at 1. It argues that California's anti-

---

[14] It does not matter whether, as he has asserted, Martinez-Rodriguez was not committing a crime when he arrived at the Bank; Aivaliklis' good-faith, reasonable belief is all that is required here. See Gomez v. Garcia, 112 Cal. App. 3d 392, 397 (1980) ("Where the validity of the arrest turns on whether that conduct constitutes a public offense, the test to be applied must be one of whether the person making the arrest had a reasonable good faith belief that it did.").

14

SLAPP law therefore shields it from the causes of action for (1) negligence, (2) infliction of emotional distress, (3) negligent supervision, (4) misrepresentation and fraud, and (5) conversion.[15] Id.

### A. Legal Standard

"The [California] Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the exercise of constitutional rights." Rusheen v. Cohen, 37 Cal. 4th 1048, 1055-56 (2006) (citations omitted). The statute "establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 278 (2006). The anti-SLAPP statute applies in federal court. See, e.g., U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972-73 (9th Cir. 1999).

A decision to strike a claim under the anti-SLAPP law requires two considerations. See Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002). First, the Court must determine whether the Defendant has shown that his challenged conduct arises from "protected activity." Id. If so, it next falls upon the Plaintiff to demonstrate a "probability of prevailing on the claim." Id. To make this finding, the Court may consider the pleadings and related affidavits. Id.

### B. Discussion

#### 1. The Bank's Activity

Reporting suspected criminal activity to the police is a protected activity under the anti-SLAPP statute. See Mann v. Quality Old Time Serv., Inc., 120 Cal. App. 4th 90, 103 (2004). When such reports form a "substantial part" of the factual basis for claims, such claims are subject to the anti-SLAPP statute even though they are also partially based on other occurrences. See Mann, 120 Cal. App. 4th at 103. "[W]here a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16

---

[15] The Bank also attacks the negligence per se on anti-SLAPP grounds. As discussed above, "negligence per se" is not a legal cause of action. It therefore does not need to be addressed here.

15

unless the protected conduct 'is merely incidental' to the unprotected conduct." Id.

Martinez-Rodriguez focuses much of his pleadings on the Bank's supposed campaign to tap the Hispanic market. He argues against the Motion on the grounds that the Bank's conduct violated its policies related to that effort. See Opp'n to MTS at 5. He claims that the Defendants "implicitly represented that they were unconcerned [about] a customer's immigration status, and implicitly represented that no action would be taken to attempt to turn such immigrants over to law enforcement." Id. The last phrase reveals what truly is at issue here: the Bank's report to the police. It is unlikely that Martinez-Rodriguez would have sued if he had not been arrested. Indeed, from the beginning he asserts that "Defendants and Does through unfair and deceptive acts . . . were the direct and proximate cause of his arrest . . . ." Compl. ¶ 13. He alleges that the Bank "arranged for his arrest" and makes similar allegations throughout his claims for negligence, infliction of emotional distress, negligent supervision and fraud. See id. ¶¶ 31, 37, 43, 45, 82. These allegations, and the fact that without the arrest Martinez-Rodriguez apparently would have nothing to complain about, show that the Bank's report to police is a "substantial part" of the basis for his claims.

Martinez-Rodriguez does not deny that the arrest, and therefore the Bank's report to the police, form a substantial basis of his claims. Instead, he argues that the Bank's conduct is not protected because it was discriminatory. Opp'n to MTS at 7. It is true that discriminatory conduct may not be protected. See Flatley v. Mauro, 39 Cal. 4th 299, 320 (2006) (anti-SLAPP statute does not protect conduct that the defendant "concedes, or the evidence conclusively establishes . . . was illegal as a matter of law"). There is nothing before the Court, however, that "conclusively establishes" that the Bank's conduct was discriminatory. Martinez-Rodriguez asserts that Aivaliklis must have acted with discriminatory purpose because the Bank had a long-standing policy not to require Social Security numbers for its accounts, so "one can only wonder why Mr. Aivaliklis did not request" other identification. Opp'n to MTS at 8. But one need not wonder: Aivaliklis was told by the Bank's anti-fraud department to "verify that the social security number belonged to Mr. Martinez." Aivaliklis Decl. ¶ 6. The number, which had been submitted on a

16

"signature card" that Martinez-Rodriguez had signed, appeared to be invalid. See id. The evidence does not, therefore, conclusively establish a discriminatory purpose in Aivaliklis's query.

Martinez-Rodriguez also argues that the Bank's conduct is not protected because, as he asserts, it is not a crime to use a fake Social Security number. Opp'n to MTS at 9. Even assuming that he is right, it is obvious from the Complaint that the Marysville police did arrest him for something, and Martinez-Rodriguez nowhere contends that he was unlawfully arrested. Moreover, the statute protects the report of a suspected crime. See Mann, 120 Cal. App. 4th at 103.

Accordingly, the Bank has established that the claims for negligence, infliction of emotional distress, negligent supervision and fraud arise from the Bank's "protected activity."

It is not evident, however, that Martinez-Rodriguez's conversion claim arises from the Bank's report to the police. The Bank attacks the eleventh cause of action by construing it as a claim for "conspiracy." See MTS at 6. As discussed above, however, civil conspiracy is not a cause of action. Moreover, it appears from the Complaint that the alleged confiscation of Martinez-Rodriguez's money occurred after the Bank's report to police. The complained-of activity therefore does not arise from protected conduct. The Court therefore DENIES the Motion as to the conversion claim.

The Court must next consider whether Martinez-Rodriguez can establish a probability of prevailing on the claims that arise from the Bank's protected activity.

### 2. Probability of Prevailing

To establish such a probability, Martinez-Rodriguez must show that the Complaint is both legally sufficient and supported by a prima facie showing of facts that are sufficient to support a favorable judgment if the evidence submitted by plaintiff is credited. Navellier v. Sletten, 29 Cal. 4th 82, 88-89 (2002). In making the determination, the Court can consider the pleadings and evidentiary submissions of both plaintiff and defendant, but it can not weigh credibility or comparative strength of the evidence. Soukup, 39 Cal. 4th at 291. A

17

1  court considers defendant's evidence only to determine if it defeats plaintiff's showing as a
2  matter of law. Id. The plaintiff need only establish that his or her claim has "minimal merit"
3  to avoid being stricken as a SLAPP. Navellier, 29 Cal. 4th at 89.

4  The Bank argues on two fronts that Martinez-Rodriguez cannot prevail as a matter of
5  law. First, it contends that Section 47(b) of the California Civil Code bars tort liability for
6  making statements to the police. MTS at 8. Alternatively, it asserts that the Annunzio-Wylie
7  Anti-Money Laundering Act ("the Act") confers "absolute immunity" on the disclosure of a
8  crime to police. Id.

### a. Section 47(b) Privilege

Section 47(b) bars liability in tort for reporting suspicious activity to the police. Hagberg v. Cal. Fed. Bank FSB, 32 Cal. 4th 350, 364 (2004); Cal. Civ. Code § 47(b).

The parties disagree whether Section 47(b) applies to claims where, as here, the plaintiff alleges race discrimination. The California Supreme Court has not decided the issue. See Hagberg, 32 Cal. 4th at 376 (declining to resolve question after finding that the plaintiff had not sufficiently established a discriminatory motive for the defendant's conduct). Because (1) Martinez-Rodriguez has not sufficiently alleged a discriminatory motive for the Bank's conduct, as discussed above, and because (2) the Court can adjudicate this Motion under the Bank's alternative theory, the Court declines to reach this issue.

### b. Annunzio-Wylie Immunity

Alternatively, the Bank argues that "the Annunzio-Wylie Anti-Money Laundering Act . . . confers absolute immunity on 'any financial institution that makes a voluntary disclosure of any possible violation of law . . . to a government agency . . . .'" MTS at 10 (quoting 31 U.S.C. § 5318(g)(3)(a)).

Martinez-Rodriguez argues that the Act covers only the filing of "Suspicious Activity Reports" ("SAR") to federal agencies. Opp'n to MTS at 14-15. He also contends that the Act covers only reports made in good faith, and the Bank's conduct was motivated by discriminatory purpose. See id. at 15. This Court has rejected both legal arguments before. See Henry v. Bank of America Corp., No. 09-628, 2010 WL 431969, at *3-5 (N.D. Cal. Feb.

United States District Court
For the Northern District of California

2, 2010).

First, the Act clearly applies both to "disclosure[s] pursuant to this subsection" (*e.g.*, a SAR) and to any "voluntary disclosure of any possible violation of law." 31 U.S.C. § 5318(g). This latter clause is far broader than the former, and it reaches disclosures that have nothing to do with SARs.

Second, the weight of circuit-level authority is opposed to reading a "good faith" requirement into the Act. Only the Eleventh Circuit has done so. See Lopez v. First Union National Bank, 129 F.3d 1186, 1192 (11th Cir. 1997) ("In order to be immune from liability, it is sufficient that a financial institution have a good faith suspicion that a law or regulation may have been violated, even if it turns out in hindsight that none was."). Meanwhile, two other circuits have explicitly criticized the reasoning and conclusion in Lopez. The Second Circuit explains that "[t]here is not even a hint that the statements must be made in good faith in order to benefit from immunity." Lee v. Bankers Trust Company, 166 F.3d 540, 544 (2d Cir. 1999). The First Circuit likewise has concluded that the language and legislative history of the Act caution against imposing an implied "good faith" requirement. See Stoutt v. Banco Popular de Puerto Rico, 320 F.3d 26, 31 (1st Cir. 2003). See also Eyo v. United States, No. 06-6185, 2007 WL 4277511, at *5 (D.N.J. Nov. 29, 2007) (collecting cases).

This Court has chosen to follow the First and Second Circuits, and has not required that the disclosure be in good faith. See Henry, 2010 WL 431969, at *5. The plain language of the Act provides immunity for a "voluntary disclosure of any possible violation of law," and to impose a good faith requirement on top of this clear statutory text would result in a far narrower preemption provision.

Accordingly, the Act immunizes the Bank's report to the police, which forms a substantial basis for Martinez-Rodriguez's claims for negligence, negligent and intentional infliction of emotional distress, negligent supervision, and misrepresentation and fraud. As a matter of law, therefore, Martinez-Rodriguez cannot prevail on these claims. The Court therefore GRANTS the Motion to Strike those causes of action.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS both Motions. The following causes of action are dismissed <u>with</u> prejudice:

- First (negligence/failure to train);
- Second (negligent infliction of emotional distress);
- Third (intentional infliction of emotional distress);
- Fourth (negligence per se);
- Ninth (negligent supervision); and
- Tenth (misrepresentation and fraud).

The following causes of action are dismissed <u>without</u> prejudice:

- Fifth through Eighth (Section 1983);
- Eleventh (conversion)
- Twelfth (Fair Housing Act);
- Thirteenth (declaratory relief); and
- Fourteenth (false imprisonment).

Plaintiff has thirty (30) days from the date of this Order to file an amended complaint.

**IT IS SO ORDERED.**

Dated: March 21, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE